THE STATE OF FLORIDA, *ex rel.*, THE RAILROAD COMMIS-SIONERS, V. THE ATLANTIC COAST LINE RAILROAD COM-PANY, A CORPORATION, AND THE SEABOARD AIR LINE RAILWAY, A CORPORATION.

Opinion Filed May 19, 1914.

1.  When the sufficiency of an alternative writ of mandamus has been attacked by demurrer and such demurrer, at the hearing thereon, has been overruled, such ruling is in effect that, if the allegations in the writ are true, the relators are entitled to the relief sought.

2.  Where it plainly appears from the return to the writ in a mandamus proceeding that the respondent had afforded to it ample opportunity of raising the defensive matters set up therein by which such respondent seeks to justify the course it has pursued before the Railroad Commissioners and that such defenses as a matter of fact were so raised and decided adversely to the respondent, as the statute makes orders of the Railroad Commissioners *prima facie* reasonable and just, a respondent corporation which still failed and refused to comply with the orders in question must be held in pursuing

such course to have acted at its peril. Unless the return clearly shows that such orders were arbitrary, unreasonable and unjust, a demurrer interposed thereto will be sustained.

3. The right of third persons not parties to the action to interplead in proceedings in mandamus rests wholly upon statute, no such rights existing at common law, and, in the absence of a statute so authorizing, such third persons cannot be permitted to intervene.

This is a case of original jurisdiction.

Peremptory writ awarded.

*F. M. Hudson,* for Relators;

*W. E. Kay, W. J. Oven* and *Wilson & Boswell,* for Respondents.

### STATEMENT.

The former hearing in this cause was had upon the demurrer interposed by the Seaboard Air Line Railway to the alternative writ, which resulted in such demurrer being overruled. See 63 South. Rep. 729, wherein the writ and demurrer thereto will be found copied. The Seaboard Air Line Railway, as allowed by the opinion rendered therein, has filed the following return or answer:

"Now comes the respondent, Seaboard Air Line Railway by its attorneys, and for a return to the alternative writ of mandamus, issued from this court on the petition of the relators in the name of the State of Florida, says:

1st. That this respondent admits all of the facts set forth in paragraph numbered one of said alternative writ.

2. That this respondent admits all of the facts set

forth in the paragraph numbered two of said alternative writ, except insofar as the allegations of the said paragraph go with reference to the completion of this respondent's road into the town of Bartow, and as to these allegations this respondent says that on the 29th day of July, A. D. 1912, it had not laid any track inside of the corporate limits of said town, nor had it graded its track inside of the corporate limits of said town up to and on said date.

3rd. That this respondent admits all of the facts set forth in the paragraph numbered three of said alternative writ.

4th. That this respondent admits all of the facts set forth in paragraph numbered four of said alternative writ, and further answering thereto as to that part thereof says: That at the meeting held in Bartow on the day therein alleged that the question of locating the proposed union passenger station at the point where relators did locate it was opposed by the Mayor of the Town of Bartow, the President of the City Council, the President of the Board of Trade, and other citizens.

5th. That this respondent admits that on the 6th day of September, A. D. 1912, the said relators did make and enter their certain Order numbered 369, File 3296, in words and figures as set out in the said paragraph numbered five of the said alternative writ, but this respondent further answering as to said order, says: That the same as made and entered, upon the facts and circumstances as they existed at the time of the hearing on August 21st, 1912, and at the time the said Order was made, was arbitrary and unreasonable and against the public interest and against the public welfare of the citizens of Bartow, and against the wish and desire of a large majority of the citizens of said town, and is like-

wise so now, because this respondent says the point or place chosen by the said relators is three quarters of a mile from the Court House, which is situated in the center of the business section of the said town, and is the furthermost point that could have been chosen by relators from the residential section of said town, and because there are no public streets leading to the proposed site, and that to open up streets to the said proposed site and to grade and prepare them so as to be safe and convenient for vehicles and pedestrians to use going to and from the said depot site as selected by relators would cost the city of Bartow for such grading and the acquiring of the right-of-way by condemnation, and the building of sidewalks, about fifteen thousand dollars to put said streets and sidewalks, leading to and from the said proposed site in a reasonably good condition for vehicles and pedestrians to use, and furthermore, in reaching said point with a street the said city of Bartow would have to acquire the right to use the right-of-way of one of the respondents' railroads for a street, or acquire by condemnation of private property a right-of-way for a street to such point so selected, while the present station of the Atlantic Coast Line is reasonably and conveniently located for the use of the citizens of Bartow and the public generally with a good street and sidewalks leading thereto from the town, and that the depot of the respondent, Seaboard Air Line Railway, as built and constructed by it after it built into and began to operate trains within the town of Bartow, is sufficiently large and commodious and provided with all ordinary and reasonable comforts and facilities for passengers, and is within one-quarter of a mile from the court house, at the foot of the main street of said town, such street being known as Broadway, with a good hard surface road

thereon running from the depot of this respondent up through the center of the town, and with good paved sidewalks running to said depot on each side of said street, and said depot being conveniently located to the hotels of said town, and particularly so to the Court House, such Court House being the County Court House of Polk County, and a large number of the citizens of Polk County being accustomed to using said respondent's line of railway from the town of Mulberry and other stations in said county on respondent's line of railway coming to and going from the said town of Bartow for the purpose of acting as witnesses, jurors and litigants in the County and Circuit Court held in the Court House within the town of Bartow, it being the custom of such citizens of said county to walk from this respondent's depot to the Court House, or to the business section of the town, and thence back to the depot, whereas by a change of the location to the northeast corner of the city limits of the town of Bartow, as the relators seek to do by the enforcement of said order, would make the distance so great from the Court House and from the business section of said town of Bartow that such citizens going into or leaving said town, or the public generally going into or leaving said town, would be compelled to employ vehicles so that they could be transported from and to said proposed site to the Court House, hotels or business section of the town, and will thereby be required to incur an unnecessary inconvenience and expense. That the schedules of the trains operated on the lines of respondents' respective roads is such that connection from one depot to another can be easily made and can be easily done without the necessity of a union station for that purpose, and that not over seven or eight passengers per month traveling on interline journeys over

the lines of the respective respondents here are handled by either of these respondents, and that therefore even though such union passenger station might be somewhat more convenient to said seven or eight passengers so traveling each month, the inconvenience to the general public residing in the town of Bartow, Polk County and elsewhere would be far greater, and a far greater number would be and will be inconvenienced by the erection of a union passenger station at proposed site, as sought to be enforced in and by said order, than will be the few inter-line passengers if the respondents severally are allowed to maintain their own separate passenger depots as now constructed and in use. That the north side of the town of Bartow along which this respondent's line runs parallel with the north boundary thereof, is bounded by swampy lands which will never be developed for residential purposes, whereas the south side of the town is rapidly building up, and the effect thereof is to gradually remove from the northeast corner of said town, the point where the proposed union passenger station has been located by relators further from the center of business and the center of the population of the town. Further, that where this respondent has at present a comfortable and spacious new depot constructed, which was constructed prior to the issuance of this writ, sewerage conveniences can easily be obtained from the sewerage system of the town of Bartow, and this respondent's said depot is equipped with all conveniences incident thereto, whereas at the proposed site, ordered by the relators, the sewerage system of the town of Bartow is a far distance therefrom and cannot be connected with, without an enormous expenditure, and further where the present depots of the respective respondents are located the streets of the town of Bartow are well lighted through-

out down to each of the said depots so as to facilitate
and convenience the travelers by night, whereas the pro-
posed location is far out of the city's electric light sys-
tem and the approach thereof to passengers and depart-
ure therefrom of passengers, if such station is so located,
will be at great inconvenience and discomfort of such
passengers. That this respondent's line of railway enters
said town on the northwest corner and runs in an east-
erly direction parallel with the north boundary to the
foot of Broadway, one of the principal streets in said
town, where this respondent's depot is now located.
This respondent company has acquired a right-of-way
eastward from the foot of said Broadway street along
the north boundary of said town to and across the tracks
of its co-respondent, the Atlantic Coast Line Railroad
Company, for the purpose, should it find it expedient so
to do in the future, of extending its road, and in the event
that the business would justify it of extending possibly
a spur or switch-track to a phosphate mine lying east of
said town of Bartow, it being now a distance of about
three-quarters of a mile from this respondent's depot at
its most easterly point on its line to where it would inter-
sect with its co-respondent's line if extended thereto in
obedience to and for the purpose of complying with re-
lators' order, and which extension would cost over and
above the cost of the right-of-way, and the clearing there-
from of residences thereon at present, not now contem-
plated or not heretofore contemplated by this respondent
to be razed, large sums of money to-wit: Between five
and ten thousand dollars for the building of this res-
pondent's track from its present depot to the proposed
union passenger station site as located and ordered by
relators, and that the effect thereof and thereby would
be to cause this respondent to expend for the purpose of

complying with such order an amount of money far and in excess of any reasonable requirement that is necessary to give to the citizens of Bartow or Polk County, or to the public generally such reasonable and adequate facilities as respondent is required by law to furnish, and thereby deprives the respondent of its property, without due process of law, and thereby violates the provisions of Article 5, of the Constitution of the United States, and further that the effect of the requirements of the said order as made by the relators is to enforce and require of this respondent an extension of this respondent's line from its present eastern terminus in the town of Bartow at its own expense, and without aid from its co-respondent, down to where such extension would intersect with its co-respondent's line, and thereby enforces upon this respondent an expenditure of between ten and fifteen thousand dollars for the purpose of complying with said order over and above the proportion of one-half of the cost of erecting and furnishing the proposed union passenger station at the site proposed by the relators in their said order, and by reason of the fact that said order requires this respondent's co-respondent to participate only in the cost of the construction and furnishing of said union passenger station provided for in said order, and requires this respondent in addition to standing its share of the expense incident to the erection and furnishing of said station to go to the great expenditure of between ten and fifteen thousand dollars to extend its line of railway to the site proposed in said order, and thereby by its operation and effect deprives this respondent of the equal protection of the laws, and thereby violates the 14th Amendment to the Constitution of the United States, and did so at the time of the making of said order.

6th. That this respondent admits all of the allegations contained in paragraph numbered six of the said alternative writ and as its reasons for failure to comply with the order therein mentioned alleges each and every of the facts and averments set forth and contained in the fifth, or preceding paragraph of this respondent's answer.

7th. This respondent further answering, admits the allegations contained in paragraph numbered seven of the said alternative writ, and says in response thereto that at the said hearing held on the 21st day of January, 1913, in the City of Jacksonville, for the purpose of setting forth its objections and reasons for failing to comply with relator's Order No. 369, appeared by its counsel and other officials and respectfully requested the said relators then and there to rescind their said order, which request was thereupon promptly, unequivocally and emphatically denied by the said relators, and that thereupon and immediately thereafter this respondent by its said counsel, then present, respectfully requested of the said relators that this respondent be permitted to forthwith file in writing its application to the said relators to resciend their said Order No. 369, and thereupon the said relators promptly, unequivocally and emphatically denied said request. And that at the said time and place a large delegation of the citizens of Bartow consisting of some ten or fifteen among whom was the Mayor of said city, the President of the City Council of said city, the President of the Board of Trade, and members of the City Council, and of the said Board of Trade, and prominent business men of said city, by their several spokesmen, respectfully requested that the said relators rescind their said Order No. 369, and this request the said relators promptly, unequivocally and emphatically then and there denied.

8th.  Further answering the said alternative writ, this respondent admits that the Order set forth and described in paragraph numbered eight of said alternative writ was made as therein alleged, but this respondent in response thereto alleges each and every of the facts and allegations set forth in the preceding paragraphs of this its return to said writ for its reasons for failure to comply therewith, and further answering, saith in addition thereto that at the time of relator's citation, made on the 29th day of July, 1912, this respondent has not built its line of railway into the town of Bartow, nor was it operating therein then as common carrier, nor had it on the 6th day of September, 1912, when relator's Order No. 369 was made, built its line of railway into the town of Bartow, nor was it then operating therein as a common carrier, nor had it on the 11th day of January, 1913, when relator's second citation in said writ mentioned was made, begun operating in the town of Bartow as a common carrier, nor had it begun operating in the town of Bartow as a common carrier when Order No. 388 of relator's was made by them, and that therefore said relators had no jurisdiction over this respondent in the premises.

And further answering this respondent for a return to the said writ, and for its reason for failure to comply with the relator's said order alleges each and every of the facts and allegations heretofore set forth and made, and says that in addition thereto that at the time of the issuance of the alternative writ by this Honorable Court that it had then built in the town of Bartow at the foot of Broadway (street) a most convenient and desirable site satisfactory and in every way acceptable to a large majority of the citizens of Bartow and of Polk County, and to the public generally, a depot of ample size, work-

manship and finish, and that such depot had seperate waiting rooms and ticket windows for the white and colored races according to law and that each waiting room had ample and sufficient space and was comfortably and cleanly furnished and provided with adequate, suitable and healthy toilet accommodations for passengers of each sex and race, and had sufficient and suitable sheds, platforms, walkways, approaches and a baggage room sufficiently large and suitable to meet the necessities of the traveling public handled by this respondent and that said depot was provided with adequate electric lights and all other facilities and conveniences necessary and suitable for the proper operation thereof and to well and adequately fill the wants and necessities of the traveling public.

10th. Further answering the said alternative writ this respondent says that the effect, scope and plain intent of the said order of the relators sought in and by said alternative writ to be enforced requires of this respondent to extend from its present terminus along the right-of-way owned by it upon which residences now stand which yield this respondent an income and which must be razed and destroyed if this respondent's right-of-way is built upon and its track extended from its present terminus along said right-of-way to where it will intersect with the Atlantic Coast Line Railroad, demands and requires of this respondent an expenditure or outlay of between ten and fifteen thousand dollars in cash over and above the cost of the construction of the said proposed union passenger station and over and above the proportion of the expense which the Atlantic Coast Line Railroad Company is by said orders required to incur in the compliance with said order and that therefore and thereby the said orders and each of them, and this alter-

native writ, if the mandatory part thereof is enforced, will thereby and by reason thereof deprive this respondent of the equal protection of the laws in that it will enforce for a public convenience an expenditure on the part of this respondent in proportion to the expenditure required of this respondent's co-respondent of about fifteen or seventeen thousand dollars as compared to two or three thousand dollars which the Atlantic Coast Line Railroad Company will be thereby required to expend, and therefore the said orders and the said writ do, and will, violate the 14th Amendment to the Constitution of the United States."

To this return the Relators have interposed the following demurrer:

"The relators say that the return of the respondent Seaboard Air Line Railway to the alternative writ is bad in substance.

And the relators say that each of the paragraphs of the said return, numbered 2, 4, 5, 6, 7, 8, 9, and 10 is bad in substance.

And for cause of demurrer the relators show:

(1) The order of the Railroad Commissioners set out in the alternative writ is presumed to be reasonable and just and the said return does not set up facts sufficient to rebut this presumption.

(2) The said return does not set up facts sufficient to show that the Railroad Commissioners were without authority to make the order in question.

(3) The matters set up in the paragraphs numbered 2 and 8 of the return do not show that the respondent Seaboard Air Line Railway had not entered the town of Bartow at the time the order in question was made.

(4) Even if the matters set up in said paragraphs 2 and 8 do show that respondent had not entered the

town of Bartow, it is not sufficiently made to appear that the Commissioners were without authority to make the order in question.

(5)   It does not sufficiently appear from the said return that the effect of the order will be to operate upon respondent in an arbitrary and unreasonable manner; nor does it sufficiently appear from the said return that the effect of the order will be to deprive respondent of its property without due process of law or deny to it the equal protection of the laws, as is alleged in said return.

(6)   The matters alleged in paragraphs numbered 4 to 7 inclusive, do not furnish a proper foundation for a review by the court of an administrative order of the Railroad Commissioners.   Respondent can only question the reasonableness of the order insofar as its constitutional rights are affected; the effect upon the citizens and town of Bartow cannot be inquired into in this proceeding and can not avail respondent as a defense to the alternative writ.

(7)   The facts alleged in the fifth, sixth and tenth paragraphs of the said return are not such as to show that the Order in question would amount to a deprivation of respondent of its property without due process of law or a denial to it of the equal protection of the laws.

(8)   The order in question undertakes to enforce the obligations of the respondent companies to provide adequate facilities for the proper accommodation.of their patrons, and is therefore not violative of the Fifth Amendment to the Constitution of the United States.

(9)   The facts alleged in the ninth paragraph of the said return show on the face thereof that respondent has disobeyed the Order of the Commissioners.   Respondent

cannot plead its own disobedience of the Order as a defense to this action to compel observance of the order."

At the same time the relators filed a motion to strike certain portions of the return, which motion is as follows:

"The relators by their attorney move to strike from the second paragraph of the return herein filed by the respondent Seaboard Air Line Railway the following, to-wit:

Beginning with the words 'except in so far' and all thereafter in the said paragraph.

(1)   The said matter is not responsive to any allegation of the alternative writ or the second paragraph thereof;

(2)   The said matter only tends to raise an immaterial issue.

And the relators move to strike from the fourth paragraph of the said return the following:

Beginning with the words 'and further answering' and all thereafter in the said paragraph.

(1)   The said matter is immaterial and irrelevant;

(2)   It is not pertinent to the issues in this case what certain citizens of Bartow said or did at the meeting held by the Commissioners in that city.

And the relators move to strike from the fifth paragraph of the said return the following:

1.   Beginning with the words 'and against,' in the tenth line of said paragraph, down to and including the word 'located,' on page 5, tenth line from the bottom.

(1)   The said matter is immaterial and irrelevant;

(2)   The said matter does not tend to show that the effect of the order of the Commissioners operated upon the respondent in an arbitrary and unreasonable manner, or imposed undue burdens upon respondent, or affected respondent in any way whatsoever;

(3)   The said matter is purely evidentiary.

(4)   The matters alleged are not the proper basis for a review by the court of the Order of the Commission.

2.   Beginning with the word 'cost,' in the third line of page 6, down to and including the words 'be to' in the eleventh line of the same page.

(1)   The matter alleged is not responsive to the writ;

(2)   The said matter is repugnant to other allegations of the same paragraph;

(3)   The said matters tends to prejudice, embarrass and delay a fair trial of the action.

3.   Beginning with the words 'and further,' found on page 6, nineteenth and twentieth lines, down to and including the word 'order,' in the fifth line from the end of said paragraph.

(1)   The matter alleged is contradictory and repugnant to other affirmative allegations of the same paragraph;

(2)   It appears affirmatively from the return that the effect of the order is not as alleged;

And as to the said fifth paragraph generally, because the same as now framed is double, and tends to prejudice and embarrass and delay a fair trial of the action.

And the relators move to strike from the sixth paragraph of the said return the following:

Beginning with the words 'and as its reasons for' and all thereafter in the said paragraph.

The said matter being merely a re-statement by reference of the facts alleged in the preceding paragraph, is subject to be stricken on the same grounds as were assigned with reference to the fifth paragraph.

And the relators move to strike from the seventh paragraph of the said return the following:

Beginning with the words 'and says in response' and all thereafter in said paragraph.

(1)   The said matter is impertinent, irrelevant and immaterial;

(2)   The said matter is not responsive to any allegation of the writ or of the seventh paragraph thereof.

And the relators move to strike from the eighth paragraph of the said return the following:

1.   'But this respondent in response thereto alleges each and every of the facts and allegations set forth in the preceding paragraph of this its return to said writ for its reasons for failure to comply therewith.'

(1)   Because the said matter so sought to be incorporated in this paragraph by reference is impertinent, irrelevant and immaterial and is not responsive to any allegation of the writ or of the eighth paragraph thereof.

2.   Beginning with the words 'and further answering' and all thereafter in the said paragraph.

(1)   The said matter is not responsive to any allegation of the writ or of the eighth paragraph thereof;

(2)   The said matter tends only to raise immaterial issues;

(3)   The said matter does not show that respondent was not at the time of the issuance of the order in question preparing to act as a common carrier in Bartow and does not show that respondent is not now so operating.

And the relators move to strike the ninth paragraph of the said return in whole.

(1)   The facts alleged are no defense to the writ;

(2)   The said paragraph affirmatively shows a disobedience by respondent of the order which this suit is brought to enforce.

And the relators move to strike from the tenth paragraph of the said return the following:

Beginning with the word 'upon which,' in the sixth line thereof, down to and including the word 'railroad' in the tenth line of said paragraph.

(1) The said matter is irrelevant and immaterial;

(2) The said matter does not show that respondent will be denied the equal protection of the laws, even if the effect of the order be as alleged."

SHACKLEFORD, C. J., (*after stating the facts*).—It is obvious that we were of the opinion that the relators made a *prima facie* showing in their petition, else we would not have ordered the issuance of the alternative writ. When the Seaboard Air Line Railway, one of the respondents, tested the sufficiency of the writ by a demurrer, upon the hearing thereof, after due consideration, aided by the arguments of the counsel for the respective parties, we held that the writ was not open to the attack so made upon it. State v. Atlantic Coast Line R. R. Co., 63 South. Rep. 729. We shall not repeat what was there said. In substance we held that, if the allegations in the writ were true, the relators were entitled to the relief sought. The respondent has filed its return to the writ in which it seeks to justify the course it has pursued, the sufficiency of which is now called in question by the demurrer interposed by the relators. Reading the writ and the return together, it appears that the material allegations in the writ are admitted to be true by the respondent. In other words, as we said upon the former hearing, "It plainly appears that the respondent had ample opportunity afforded it of raising these defensive matters at the hearing before the Railroad Commissioners." It now further appears that they were so raised

and decided adversely to the respondent. It further appears that at such hearing the "Mayor of the town of Bartow, the President of the City Council, the President of the Board of Trade, and other citizens" were also present and afforded an opportunity of making any statements and presenting any evidence or arguments they deemed advisable. Afterwards the order was made, which is set forth in full in the writ, for the erection of a joint passenger station, as therein directed. Under the statute, as we also stated in our former opinion, this order is *prima facie* reasonable and just, and, unless overcome by evidence, is enforceable. It further appears that, upon due notice to both respondents, the relators made another order, extending the time for the completion of such joint passenger station. While the respondent, the Seaboard Air Line Railway, had not completed the laying of its track into the corporate limits of the town of Bartow, at the date of the first order, it was proceeding to do so, and subsequently did so construct its track into the corporate limits of such town. It further appears that, notwithstanding such two orders made by the relators, which were and are *prima facie* reasonable and just, the respondent, the Seaboard Air Line Railway, failed and refused to comply with the same, but saw fit to stand and rely upon their contention that such orders were arbitrary, unreasonable and unjust, and, in the face of such orders, proceeded to construct a separate depot in such town. It is plain, we think, that in pursuing such course the respondent must be deemed to have assumed the risk and to have acted at its peril. If it has gone to the unnecessary expense of constructing a separate passenger station, it has deliberately put itself in such plight and must suffer the consequence of its own act. In addition to what we said in our former opinion

in this cause, we would refer to the opinion which was rendered subsequently thereto in State v. Florida East Coast Ry. Co., 64 South. Rep. 443. It is of such recent date that we shall not copy anything that we said therein. Applying the principles enunciated in these two opinions, we are clear that the showing made by the respondent in its return is insufficient. Apparently it has not only disregarded the orders of the, relators but has actually defied them. We cannot be expected to lend our sanction to any such course, but must express our strong disapproval of it. Giving the most favorable construction permissible to the return of the respondent, it has not justified the course it has pursued in the premises. The demurrer to the return is sustained, therefore it becomes unnecessary to consider the motion to strike certain portions of the return.

A paper, entitled "Bill of Intervention," has been presented to us by counsel on behalf of the City of Bartow. It is sufficient to say that the City of Bartow has no *locus standi* in this proceeding. We have no statute authorizing it, and, as is stated in High's Extraordinary Remedies (3rd ed.) Section 450-a, "The Right of third persons not parties to the action to interplead in proceedings in mandamus rests wholly upon statute, no such rights existing at common law."

The Atlantic Coast Line Railroad Company, the other respondent, filed its answer to the writ, which, after admitting the material allegations therein, contains the following:

"11. Answering the eleventh paragraph, this Respondent, Atlantic Coast Line Railroad Company, respectfully says that while there has been a failure on its part to submit to the Railroad Commissioners of the State of Florida plans for said joint station building, sheds, platforms

and other facilities, as required in and by said Order No. 368, same arose because of the position taken by its co-respondent, the Seaboard Air Line Railway; for that the Atlantic Coast Line Railroad Company, while not admitting the power to reside in the Railroad Commission, as claimed by them, and also feeling that the order for a joint passenger station at Bartow should not have been made, yet, concluding to make no objections thereto, has been and is still willing to abide by and perform the Order. Necessarily performance can only be made in co-operation with the Seaboard Air Line Railway, without whose concurrence the Atlantic Coast Line Railroad Company cannot take any steps to comply with said Order.

WHEREFORE this respondent says that insofar as Atlantic Coast Line Railroad Company is concerned, it is not opposing the Order of the Florida Railroad Commissioners mentioned, but submits that until the Seaboard Air Line Railway announces itself in a position to join this defendant in the preparation of plans for the construction of these facilities, to be erected at the joint expense of both, this Respondent is not legally in default."

A peremptory writ will issue against the two respondents. The costs of this proceeding will be taxed against the Seaboard Air Line Railway.

TAYLOR, COCKRELL, HOCKER AND WHITFIELD, J. J., concur.