ATLANTIC COAST LINE RAILROAD COMPANY, A CORPO-
RATION, *et al., Plaintiffs in Error,* v. THE STATE OF
FLORIDA, *Defendant in Error.*

Opinion Filed March 12, 1917.

Petition for Rehearing Denied March 17, 1917.

1. The general rule is that courts will take judicial notice of all
general or public domestic statutes, and they need not be
specially pleaded, and, where a public statute is applicable to
a case, it is sufficient that the pleading of the party who seeks
to rely upon the statute shall set forth the facts which bring
the case within it; and it is not necessary to recite the title
of the act or otherwise designate or even refer to it.

2. As a general rule, if the allegations of the declaration bring the
case within the provisions of the statute, it is not necessary
either to plead the statute or to count on it, but where the
action is for a penalty, it is necessary, under the common law
system of pleading, both to plead the statute and to declare
upon it.

3. A common law declaration upon a statute in an action for the
recovery of a penalty, imposed under the statute, is bad
upon demurrer if it does not in the same count state the cir-
cumstances necessary to support the action, and expressly
refer to the provision counted on.

4. Pleading the statute is stating the facts which bring the case
within it, and counting on it is making express reference to
it by apt terms to show the source of right relied on.

5. The common law system of pleading is in force in Florida,
except where the same has been changed or modified by
statute or rule of court. The common law doctrine as to ac-
tions for the recovery of penalties, prior to the adoption of
Section 12 of Chapter 6527 of the Laws of Florida (Vol. 1,
Acts of 1913, p. 412), had not been changed either by statute
or rule, but remained in force, though requiring private acts

or statutes to be specifically pleaded was abrogated by statute at an early date.

6. In determining whether a statute is penal in the strict and primary sense, a test is whether the injury sought to be redressed affects the public. If the redress is remedial to an individual and the public is indirectly affected thereby, the statute is not regarded as solely and strictly penal in its nature.

7. Penal laws, strictly and properly, are those imposing a pecuniary or personal punishment for an offense against the State, and which are subject to the pardon power.

8. Section 2908 of the General Statutes of 1906 expressly provides that any fine or penalty imposed by the Railroad Commissioners under the provisions of such Chapter, "if not promptly paid to the State Treasurer, shall be recovered with interest thereon by an action brought by said Commissioners in the name of the State of Florida." Section 12 of Article IV of the State Constitution, as amended, empowers and authorizes the Governor and other designated State officers constituting the Board of Pardons to "remit fines and forfeitures, commute punishment," etc. This language is sufficiently comprehensive to embrace fines imposed by the Railroad Commissioners, therefore Section 2908 of the General Statutes of 1906 is a penal statute.

9. A penal law must be construed strictly and according to its letter. Nothing is to be regarded as included within it that is not within its letter as well as its spirit; nothing that is not manifestly intended by the Legislature. And where a penal statute contains such an ambiguity as to leave reasonable doubt of its meaning, where it admits of two constructions, that which operates in favor of life or liberty is to be preferred.

10. In construing legislative enactments, whether penal or remedial, the vital intention of the law-makers, as gathered from the language and purpose of the acts, is the guiding star; and every portion of an act should be given its proper effect.

11. Statutes in derogation of the common law and penal statutes are not to be construed so strictly as to defeat the obvious in-

tention of the Legislature as found in the language actually used according to its true and obvious meaning.

12. The Railroad Commissioners are statutory officers whose powers are special and limited. They can exercise only such authority as is legally conferred by express provisions of law, or such as is by fair implication and intendment incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the purpose for which the offices were established. Any reasonable doubt of the existence in said commissioners of any particular power should be resolved against their exercise of such power.

13. While the words, "rule, regulation" and "order" are frequently used as synonyms, they do not always mean the same thing and are not interchangeable at will. In determining their exact meaning when used in a statute, much depends upon the context.

14 Section 2908 of the General Statutes of 1906, which authorizes the imposition of a penalty by the Railroad Commissioners upon "any railroad, railroad company or other common carrier doing business in this State," for "a violation or disregard of any rate, schedule, rule or regulation provided or prescribed by said commission," does not authorize the commissioners to impose a penalty upon railroad companies for failure to comply with an *order* for the erection of a union depot, on or by a fixed date.

Writ of Error to Circuit Court for Hillsborough County; F. M. Robles, Judge.

Judgment Reversed.

*Sparkman & Carter* and *Knight, Thompson & Turner,* for Plaintiffs in Error;

*D. C. McMullen,* for Defendant in Error.

SHACKLEFORD, J.—In November, 1911, an action at law was brought in the Circuit Court in and for Hillsborough County by the Special Counsel for the Railroad Commissioners in the name of the State of Florida against the Atlantic Coast Line Railroad Company, a Corporation, the Seaboard Air Line Railway, a Corporation, and the Tampa Northern Railroad Company, a Corporation, to recover the amount of a fine or penalty imposed by the Railroad Commissioners upon the defendants for the violation of an order of such Railroad Commissioners. The declaration filed in the case is as follows:

"The State of Florida by F. M. Hudson, Special Counsel for the Railroad Commissioners of the said State, by them directed to sue in this behalf, sues the Atlantic Coast Line Railroad Company, a corporation under the laws of Virginia, the Seaboard Air Line Railway, a corporation under the laws of Virginia, and the Tampa Northern Railroad Company, a corporation under the laws of Florida.

"For that the defendants are and were prior to the institution of this action and have been since, to-wit, on the 12th day of November, 1909, railroad companies and common carriers operating their respective lines of railroad wholly or partly within the State of Florida for the transportation of goods and passengers for hire and running into and doing business in Hillsboro County aforesaid, and having each of them stations or depots in the City of Tampa in said County.

"On to-wit the 30th day of November, 1909, the Railroad Commissioners of the State of Florida did hold in the Court House in the City of Tampa in the said State a meeting for the purpose of hearing and considering whether or not the said Commissioners ought to require the Atlantic Coast Line Railroad Company, the Sea-

board Air Line Railway, the Tampa Northern Railroad Company, and the Florida and West Coast Railroad Company to erect, operate and maintain a union passenger depot in the said City, and at said meeting the said four companies having had more than ten days notice in writing of the said meeting, were present by their Agents and Counsel and were fully heard in the premises.

"And thereafter, on to-wit, the 21st day of December, 1909, the said Railroad Commissioners did make and enter an Order, hereinafter called Order No. 282, in words and figures following, to-wit:

" 'ORDER NO. 282.

" 'BEFORE THE RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA.

" '*In the matter of the erection, operation and maintenance of a union passenger depot in the City of Tampa.*

" 'This matter came on for hearing in the Court . House in the City of Tampa on November 30, 1909, at 10 o'clock A. M., after due notice of the time and place of such meeting given in writing to both the petitioners and the railroad companies hereinafter named; when and where the petitioners appeared, that is to say:    The Mayor and the City Council of the City of Tampa By W. R. Rowland, City Attorney, and the Board of Trade of Tampa, the Chamber of Commerce of Tampa and the Board of County Commissioners of Hillsborough County by their Counsel, Robert W. Davis, F. M. Simonton, D. C. McMullen, M. B. Macfarlane, H. C. Gordon, H. S. Hampton and Robert McNamee; and the Atlantic Coast Line Railroad Company appeared by W. A. Carter, its Division Counsel, the Seaboard Air Line Railway by Gerge P. Raney, its Division Counsel, the Tampa Northern Railroad Company by W. B. Denham,

its General Superintendent, and the Florida and West Coast Railroad Company by C. H. Brown, its President. And on the said November 30, and on December 1, 1909, the said parties, both petitioners and respondents, were fully heard in the premises by production of evidence and otherwise, when it appeared that the Florida and West Coast Railroad Company was not a railroad entering the City of Tampa, and the Commissioners then announced, without objection, that this proceeding as to it would be dismissed, and the rest of the matters involved in this proceeding were taken under advisement.

" 'Now THEREFORE, We the Railroad Commissioners of the State of Florida being fully advised in the premises, do find and adjudge:

" '1.   That the Atlantic Coast Line Railroad, the Seaboard Air Line Railway and the Tampa Northern Railroad are all the railroads entering the City of Tampa, and that each of them is engaged in transporting passengers from and to the said City of Tampa to and from other points in the State and that such transportation is wholly within the limits of this State.

" '2.   That the Atlantic Coast Line Railroad Company, the Seaboard Air Line Railway and the Tampa Northern Railroad Company ought in view of the conditions shown at the hearing to be required to erect, operate and maintain a Union Passenger Depot in the City of Tampa, and that the location hereinafter described is the most feasible location because of its proximity to the center of the City; the convergence of the main tracks of the said three railroad companies and their ownership of the land at that point.

" ' IT IS THEREFORE ORDERED that the Atlantic Coast Line Railroad Company, the Seaboard Air Line Railway

and the Tampa Northern Railroad Company shall erect, operate and maintain a Union Passenger Depot in the City of Tampa, the floor dimensions of which shall be not less than fourteen thousand square feet, exclusive of sheds, platforms and baggage rooms; that there shall be separate waiting rooms for the white and the black races according to law, with toilet rooms for each waiting room, separating also the sexes; that suitable sheds, platforms and baggage rooms shall be provided at the said depot, including suitable sheds and platforms along and between the tracks leading into the same; and that the said Union Passenger Depot shall be located on ground bounded on the north and northwest by the main line track of the Atlantic Coast Line Railroad Company on Factory Avenue, on the east by the main line track of the Seaboard Air Line Railway on Tangent Avenue, on the south by the main line track of the Tampa Northern Railroad Company, and on the west by Nebraska Avenue.

" 'It Is Further Ordered, That the three Railroaa Companies last aforesaid shall submit to us, on or before March 1, 1910, plans showing the dimensions and arrangement of said depot, and of the waiting rooms, baggage room, sheds, platforms and of the tracks leading into the same, in order that we may determine the sufficiency and suitability thereof; and that the said Union Passenger Depot shall be completed within six months after the entry of our order approving a plan for the construction of the same.

" 'And It Is Further Ordered That This Proceeding be dismissed as to the Florida and West Coast Railroad Company.

" 'Ordered in open session of our Board in session at

the City of Jacksonville, Florida, this 21st day of December, A. D. 1909.

"'R. Hudson Burr,
"'Chairman of the Board of Railroad Commissioners of the State of Florida.'

"And thereafter on, to-wit, the 23rd day of February, 1910, upon application of the Seaboard Air Line Railway for an extension of time in which to file blue prints, it was ordered by the said Railroad Commissioners in their Order hereinafter called Order No. 290, that the time for filing said blue prints be extended to the first day of April, 1910.

"And thereafter on, to-wit, the 27th day of June, 1910, it was ordered by the said Railroad Commissioners, in and by their Order hereinafter called Order No. 297, that the plans submitted by the said Atlantic Coast Line Railroad Company, the Seaboard Air Line Railway and the Tampa Northern Railroad Company be approved and that the time for the completion of the said union depot at Tampa be fixed for January 1, 1911, and that Order No. 282 be modified to that extent only,

"And thereafter the said Atlantic Coast Line Railroad Company, the Seaboard Air Line Railway and the Tampa Northern Railroad Company were charged before the said Commissioners with having violated or disregarded said Order No. 282 entered on December 21, 1909, as modified by the said Order No. 290, entered on the 23rd day of February, 1910, and as modified by said Order No. 297 entered on June 27, 1910.

"In this, that the said railroad companies did not complete the said union passenger depot at the said City of Tampa, a station on each of their lines of railway in the State of Florida, on or before the 1st day of January, 1911, and had not completed the same on the 15th day of

April, 1911, and after ten days notice of the said charge of, the violation or disregard of the said Order as above modified as above set forth, the said defendants had an opportunity to be heard and were heard by the Railroad Commissioners aforesaid on the said charges,

"And afterwards, to-wit, on the 1st day of May, 1911, the said Railroad Commissioners, having in accordance with law duly tried the said defendants on the said charge by their Order duly entered, adjudged the said defendants guilty of violating the said Order No. 282 as modified as hereinbefore set forth and in accordance with law the said Commissioners duly fixed and imposed upon the said defendants a penalty for the said offense in the sum of Three Thousand Dollars, a copy of which judgment and order is hereto attached and made a part hereof.

"And the plaintiff alleges that by reason of the premises and according to the form of the Statutes in such cases made and provided, the said defendants became liable to pay to the State Treasurer of the State of Florida the said sum of Three Thousand Dollars with interest thereon from the 1st day of May, 1911, yet the defendants have not paid the same nor any part thereof but neglect and refuse so to do to the damage of the plaintiff.

"And the plaintiff claims Five Thousand Dollars.

"F. M. Hudson,
"Attorney for Plaintiff."

The copy of the order or judgment referred to in the declaration as being attached thereto and made a part thereof is as follows:

"Order No. 332.
"File No. 2896-B

"BEFORE THE RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA. ·

"In The Matter of The Violation By The At‡lantic Coast Line Railroad Company, Seaboard Air Line Railway, And The Tampa Northern Railroad Company Of Orders Relating To Union Passenger Depot At Tampa.

"Whereas, Charges were made against the Atlantic Coast Line Railroad Company, the Seaboard Air Line Railway and the Tampa Northern Railroad Company of having violated or disregarded our Order No. 282, entered on December 21, 1909, as modified by our Order No. 290, entered on February 23, 1910, and as further modified by our Order No. 297, entered on June 27, 1910, of all of which Orders the said railroad companies had notice, in this:

"That by our said Order No. 282 the said railroad companies were required to erect a union passenger depot in the City of Tampa, and were further required to submit to us on or before March 1, 1910, plans for the same, and were further required to complete the said union passenger depot within six months after the entry of our said Order approving a plan for the same; and that by our said Order No. 290 we afterwards extended the time for filing said plans until April 1, 1910; and that by our said Order No. 297 it was recited that we had agreed on April 1, 1910, with the said railroad companies that the time for filing the plans should be June 1st, and that the time for further completion of the said depot should be January 1, 1911, and also that the said plans had been filed on the date of the Order, namely, June 27, 1910, whereupon in and by our said Order No. 297 we approved the said plans and ordered that the time for the completion of the

said Union depot should be fixed for January 1, 1911, and that our previous Order No. 282 should be modified to that extent only.

"Yet, notwithstanding the premises aforesaid, the said railroad companies did not complete the said union passenger depot at the city of Tampa, a station on each of their lines of railway in this State and that the same was not then completed nor approaching completion, and whereas ten days written notice of the said charges and of the time and place of hearing the same was given to each of the said railroad companies by written notice dated April 15, 1911.

"AND WHEREAS, in accordance with the said notice we held a hearing at our office in the City of Tallahassee on April 28, 1911, at 10 o'clock A. M., to hear and consider the said charges and to determine the truth thereof, and also to hear and consider what penalty should be imposed upon the said railroad companies for disregarding or violating our said Orders, in case they should be found guilty of the said charges; at which said meeting the said railroad companies appeared and were duly heard and the matter was taken under advisement.

·"Now THEREFORE, We, the Railroad Commissioners of the State of Florida, being fully advised in the premises, do find and adjudge that the Atlantic Coast Line Railroad Company, the Seaboard Air Line Railway and the Tampa Northern Railroad Company are guilty of violating or disregarding our said orders as charged and have thereby incurred a penalty which is hereby fixed and imposed in the sum of Three Thousand Dollars, ($3,000.00), which they are required to pay promptly to the State Treasurer with interest as provided by law.

"Ordered in open session of our Board at our office in the City of Tallahassee this 1st day of May, A. D. 1911.
                    "R. HUDSON BURR, *Chairman.*
"STATE OF FLORIDA,
  "COUNTY OF LEON

"I, R. Hudson Burr, Chairman of the Board of Railroad Commissioners of the State of Florida, do hereby certify that the foregoing is a true copy of the entry in the Minute Book of the said Commissioners of the Order fixing and imposing the penalty in the matter of charges therein referred to against the Atlantic Coast Line Railroad Company, the Seaboard Air Line Railway and the Tampa Northern Railroad Company.

"WITNESS my hand as Chairman aforesaid at the office of the said Railroad Commissioners in the city of Tallahassee, Florida, this 9th day of September, A. D. 1911.

                    "R. HUDSON BURR,
"Chairman of the Board of Railroad Commissioners of the State of Florida."

To this declaration each of the defendants interposed a demurrer on like grounds, and by the agreement of the counsel for the respective parties only the pleadings of the Tampa Northern Railroad Company need be considered by us upon this writ of error. The demurrer interposed by the Tampa Northern Railroad Company is as follows: .

"Now comes the Tampa Northern Railroad Company, a corporation, one of the defendants in the above entitled cause, by its attorney, Peter O. Knight, and demurs to the declaration filed by the plaintiff herein, and says that the same is bad in substance and not sufficient in law to be answered unto for the following reasons, to-wit:

"First. Because said declaration does not state a cause of action.

"Second. Because said declaration does not set out or refer to the statute of the State authorizing the imposition of the penalty sued for.

"Third. Because said Railroad Commissioners, under the laws of Florida, had no power to impose the said penalty against the defendants, either jointly or individually.

"Fourth. Because the said declaration on its face shows that judgment of the Railroad Commissioners was beyond their power and void, in this, that there is no statute authorizing the imposition of a penalty under the circumstances set out in the said declaration.

"Fifth. Because the said declaration shows that the order passed by the Railroad Commissioners is void for the reason that the said Commissioners attempted to impose a penalty upon the defendants jointly and not severally.

"Sixth. Because the said declaration shows on its face that the imposition of the penalty or judgment by the Railroad Commissioners under the circumstances set out violates the Constitution of the State of Florida.

"Seventh. Because the said declaration shows on its face that the imposition of the penalty or judgment by the Railroad Commissioners under the circumstances set out violates the Constitution of the United States, and particularly the Fourteenth Amendment of the Constitution of the United States, in that said judgment constitutes the taking of the property of the defendants without due process of law.

"Eighth. Because the only law of Florida authorizing penalties to be imposed by the Railroad Commission is Section 2908 of the General Statutes of 1906, and the

said declaration shows on its face that the penalty imposed upon the defendants in this case was not for any of the causes set out in said section.

"Ninth.    Because the said declaration shows on its face that the imposition of the penalty, fine or judgment imposed by the Railroad Commissioners under the circumstances and facts set out in the declaration, is in violation of the Constitution of the United States, and particularly the Fourteenth Amendment to the same, in that the imposition of said judgment, fine or penalty denies to this defendant the equal protection of the law.

"Tenth.    Because the declaration shows on its face that the imposition of said penalty, fine or judgment, is a violation of the Constitution of the United States, in that the judgment, fine or penalty imposed by the said Railroad Commission is a direct and material burden upon interstate commerce.

"Eleventh.    Because, even if the said Railroad Commission had the authority to impose said penalty, fine or judgment, the judgment shows upon its face that the same is arbitrary, unjust and unreasonable, and is in law a deprivation of the property of this defendant, without due process of law, in violation of the Constitution of the United States."

The demurrers interposed by the three defendants were all overruled and such ruling forms the basis for the first three assignments of error. Various and sundry pleas were filed by the three defendants, all of which went out either on demurrer or motion to strike, and the defendants declining to plead further final judgment was rendered and entered against the defendants, which judgment they have brought here for review.

We take up for consideration the overruling of the demurrer to the declaration, the second ground of which is

that "Because said declaration does not set out or refer to the statute of the State authorizing the imposition of the penalty sued for." The statute in force in 1911, when the action was brought was Section 2908 of the General Statutes of 1906, which reads as follows: "If any railroad, railroad ,company or other common carrier doing business in this State, shall by any officer, agent or employee be guilty of a violation or disregard of any rate, schedule, rule or regulation, provided or prescribed by said commission, or shall fail to make any report required to be made under the provisions of this chapter, or shall otherwise violate any provision of this chapter, such company or common carrier shall thereby incur a penalty for each such offense of not more than five thousand dollars, to be fixed and imposed by said commissioners after not less than ten days' notice of the charge of such violation or disregard of rate, schedule, rule or regulation, or failure to make report, or other violation of the provisions of this chapter, and. upon which charge such company or common carrier shall have had an opportunity to be heard by said commissioners, which fine or penalty in the amount so fixed and imposed, if not promptly paid to the State Treasurer shall be recovered with interest thereon by an action brought by said commissioners in the name of the State of Florida, in any other county in the State where such action or violation has occurred, or in any other county in the State through or in which such company or common carrier runs or does business. The fact of the fixing and imposing of such fine by the commissioners, shall constitute prima facie evidence of everything necessary to create the liability or require the payment of the fine or penalty as fixed and imposed, and to authorize a recovery thereon in any action or proceeding brought by the commissioners, and a copy of the entry in

the minute book of the commissioners of the order fixing and imposing such fine or penalty, certified by the chairman of the board of Railroad Commissioners, shall constitute prima facie evidence of the fact that such fine or penalty was fixed and imposed by the commission."

It is undoubtedly true, as is stated in 36 Cyc. 1236, which is the only authority cited to us upon this point by the defendant in error that "Courts will take judical notice of all general or public domestic statutes, and they need not be specially pleaded." It is further true, as is stated on page 1237, of the work cited, that "Where a public statute is applicable to a case, it is sufficient that the pleading of the party who seeks to rely upon the statute shall set forth the facts which bring the case within it; and it is not necessary to recite the title of the act or otherwise designate or even refer to it." As is stated in note 49 to this section, after discussing the distinction between "pleading" and "counting" on statute, "As a general rule, if the allegations of the complaint bring the case within the provisions of the statute, it is not necessary either to plead the statute or to count on it; * * but where the action is for a penalty, it has been held necessary, under the common law system of pleading, both to plead the statute and to declare on it." Howser v. Melcher, 40 Mich. 185, is cited in support of this statement, which is an interesting and instructive case and cites a number of authorities. As is held therein: "A common law declaration upon a statute is bad if it does not in the same count state the circumstances necessary to support the action, and expressly refer to the provision counted on.

Pleading the statute is stating the facts which bring the case within it, and counting on it is making express reference to it by apt terms to show the source of right re-

lied on." Also see 16 Ency. of Pl. & Pr. 270 to 276; Part 2 of Vol. 2 of Saunders Pl. & Ev. 1024 to 1027; 1 Chitty Pl. (16th Amer. Ed.) 385 to 388; Gould's Pl. (Hamilton's Ed.) 60. The common law system of pleading is in force in this State, except where the same has been modified by statute or rule of court. As is stated on page 275 of 16 Ency. of Pl. & Pr. in discussing actions upon penal statutes and the modern doctrine, the change which has taken place "Is due in a large measure to the Code." In this State the common law doctrine as to actions for the recovery of penalties has not been changed either by statute or rule, therefore remains in force, though requiring private acts or statutes to be specifically pleaded was abrogated by statute at an early date. See Section 1431 of the General Statutes of 1906, which was referred to and relied on in City of Tallahassee v. Fortune, 3 Fla. 19, 52 Amer. Dec. 358. Evidently the Railroad Commissioners recognized the necessitly for further legislation upon the subject and Chapter 2908 was amended by Section 12 of Chapter 6527 of the Laws of Florida (Vol. 1 Acts of 1913 p. 412), so that such section now reads as follows:

"If any railroad, railroad company, or other common carrier doing business in this State shall by any officer, agent or employee be guilty of a violation or disregard of any rate, schedule, rule or regulation provided or prescribed by said Commission, or shall fail to make any report required to be made under the provisions of this chapter, or shall otherwise violate any provision of this chapter, such company or common carrier shall thereby incur a penalty for each such offense of not more than five thousand dollars, to be fixed and imposed by said Commissioners after not less than ten days' notice of the change of such violation or disregard of rate, schedule,

rule or regulation or failure to make report or other violation or disregard of the provisions of this chapter, and upon which charge such company or common carrier shall have had an opportunity to be heard · by said Commissioners.

"The common carrier charged shall file its defense or defenses in writing under oath, specifically setting forth each particular defense. The Commissioners may permit amendments to charges and defenses upon such terms and conditions, and with such postponements of hearing, if any, as in their opinion the ends of justice may require. They may also adopt rules to regulate the proceedings before them.

"The said penalty in the amount so imposed, if not promptly paid to the State Treasurer, shall be recovered with interest thereon from the date of the order, in a civil action brought by the said Commissioners in the name of the State of Florida in any County in the State where such violation has occurred, or in any other County through which such common carrier runs or does business.

"The declaration shall be deemed sufficient if it recites fully or sets forth the said order in which suit is brought, with an averment that the defendant is indebted to the plaintiff thereon in the amount of the penalty imposed with interest as aforesaid. In such cases there shall be no general issues, but the plea or pleas shall specifically set forth the particular defense or defenses to the action; and no defense which existed prior to the day of hearing before the Commissioners, and which was not made before them, shall be permitted in the action. The fact of the fixing and imposing of such fine by the Commissioners shall constitute prima facie evidence of everything necessary to create the liability or require the

payment of the fine or penalty as fixed and imposed, and to authorize a recovery thereon in any actions or proceedings brought by the Commissioners, and a copy of the entry in the minute book of the Commissioners of the order fixing and imposing such fine or penalty, certified by the Chairman of the Board of Railroad Commissioners shall constitute prima facie evidence of the fact that such fine or penalty was fixed and imposed by the Commission.

"Every fine when imposed by the Commissioners shall be a lien upon the railroad, equipment, boats and real property of the common carrier on which it is imposed except such real property as is not used in the business of transportation."

We next taxe up for consideration the fourth and eighth grounds of the demurrer, which are as follows:

"Fourth. Because the said declaration on its face shows that judgment of the Railroad Commissioners was beyond their power and void, in this, that there is no statute authorizing the imposition of a penalty under the circumstances set out in the said declaration. .

"Eighth. Because the only law of Florida authorizing penalties to be imposed by the Railroad Commission is Section 2908 of the General Statutes of 1906, and the said declaration shows on its face that the penalty imposed upon the defendants in this case was not for any of the causes set out in said section."

That Section 2908 of the General Statutes of 1906, which we have copied above, is a penal statute there can be no question. As we said in State v. Atlantic Coast Line R. R. Co., 56 Fla. 617, text 650, 47 South. Rep. 969, 32 L. R. A. (N. S.) 639, "In determining whether a statute is penal in the strict and primary sense, a test is whether the injury sought to be redressed affects the public. If the redress is remedial to an individual and the

public is indirectly affected thereby, the statute is not regarded as solely and strictly penal in its nature." As we also stated in this same opinion, "Penal laws, strictly and properly, are those imposing a pecuniary or personal punishment for an offense against the State, and which are subject to the pardon power." Also see to the same effect Huntington v. Attrill, 146 U. S. 657, text 667, 36 L. Ed. 1123, 13 Sup. Ct. Rep. 224, 227. Numerous other authorities may be found under the term "Penal Laws," on page 5369 of 6 Words & Phrases and page 943 of 3 Words & Phrases, second series. Section 2908 of the General Statutes of 1906, then in force, expressly provides that any fine or penalty imposed by the Railroad Commissioners under the provisions of such Chapter, "if not promptly paid to the State Treasurer, shall be recovered with interest thereon by an action brought by said Commissioners in the name of the State of Florida." Section 12 of Article IV of the State Constitution, as amended, reads as follows: "The Governor, Secretary of State, Comptroller, Attorney General and Commissioner of Agriculture, or a major part of them, of whom the Governor shall be one, may, upon such conditions and with such limitations and restrictions as they may deem proper, remit fines and forfeitures, commute punishment, and grant pardon after conviction, in all cases except treason and impeachment, subject to such regulations as may be prescribed by law relative to the manner of applying for pardons." For a discussion of this Section and the construction thereof see Singleton v. State, 38 Fla. 297, 21 South. Rep. 21, 56 Amer. St. Rep. 117, 34 L. R. A. 25. We think that the language of this section is sufficiently comprehensive to embrace fines imposed by the Railroad Commissioners. Being a penal statute, it necessarily follows that Section 2908 of the General Statutes

must be strictly construed. We held in Ex Parte Bailey 39 Fla. 734, 23 South. Rep. 552, that "A penal law must be construed strictly and according to its letter. Nothing is to be regarded as included within it that is not within its letter as well as its spirit; nothing that is not clearly and intelligibly described in its very words, as well as manifestly intended by the Legislature. And where a penal statute contains such an ambiguity as to leave reasonable doubt of its meaning, where it admits of two constructions, that which operates in favor of life or liberty is to be preferred." Also see Ex Parte Knight, 52 Fla. 144, text 149, 41 South. Rep. 786, 120 Amer. St. Rep. 191. In Snowden v. Brown, 60 Fla. 212, 53 South. Rep. 548, we held that "Statutes prescribing punishments and penalties should not be extended further than their terms reasonably justify." It is also true, as we said in State v. Atlantic Coast Line R. Co., 56 Fla. 617, text 630, 47 South. Rep. 969, 32 L. R. A. (N. S.) 639: "In construing legislative enactments whether penal or remedial, the vital intention of the lawmakers, as gathered from the language and purpose of the acts, is the guiding-star; and every portion of an act should be given its proper effect." Among other authorities in support of this proposition, we cited Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. Rep. 158, wherein it was held that "Statutes in derogation of the common law and penal statutes are not to be construed so strictly as to defeat the obvious intention of Congress as found in the language actually used according to its true and obvious meaning." In accordance with this holding, we would say that statutes in derogation of the common law and penal statutes are not to be construed so strictly as to defeat the obvious intention of the Legislature as found in the language actually used according to its true and obvious meaning.

In State v. Louisville & Nashville R. R. Co., 57 Fla. 526, 49 South. Rep. 39, we held: "The Railroad Commissioners are statutory officers whose powers are special and limited. They can exercise only such authority as is legally conferred by express provisions of law, or such as is by fair implication and intendment incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the purpose for which the offices were established. Any reasonable doubt of the existence in said commissioners of any particular power should be resolved against their exercise of such power." We had previously held in State v. Atlantic Coast Line R. Co., *supra*: "The railroad commissioners are statutory officers whose powers are special and limited. They can exercise only such authority as is legally conferred by express provisions of law or such as is by fair implication and intendment incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the purposes for which the offices were established." Also see State v. Atlantic Coast Line R. Co., 60 Fla. 465, 54 South. Rep. 394; State v. Southern Telephone & Construction Co., 65 Fla. 270, 61 South. Rep. 506; State v. Jacksonville Terminal Co., 71 Fla. 295, 71 South. Rep. 474.

There would seem to be no occasion to discuss whether or not the Railroad Commissioners had the power and authority to make the order, requiring the three specified railroads running into the City of Tampa to erect a union passenger station in such city, which is set out in the declaration in the instant case and which we have copied above. It is sufficient to say that under the reasoning and the authorities cited in State v. Atlantic Coast Line R. Co., 67 Fla. 441, 458, 63 South. Rep. 729, 65 South. Rep. 654, and State v. Jacksonville Termi-

nal Co., *supra*, it would seem that the Commissioners had power and authority.    The point which we are required to determine is whether or not the Commissioners were given the authority to impose the fine or penalty upon the three railroads for the recovery of which this action is brought.    In order to decide this question we must examine Section 2908 of the General Statutes of 1906, which we have copied above, in the light of the authorities which we have cited and from some of which we have quoted.    It will be observed that the declaration alleges that the penalty imposed upon the three railroads was for the violation of what is designated as "Order No. 282," which is set out and which required such railroads to erect and complete a union depot at Tampa within a certain specified time.    If the Commissioners had the authority to make such order, it necessarily follows that they could enforce a compliance with the same by appropriate proceedings in the courts, but it does not necessarily follow that they had the power and authority to penalize the roads for a failure to comply therewith. That is a different matter.    Section 2908 of the General Statutes of 1906, which originally formed Section 12 of Chapter 4700 of the Laws of Florida, (Acts of 1899, p. 86), expressly authorizes the imposition of a penalty by the Commissioners upon "any railroad, railroad company or other common carrier doing business in this State," for "a violation or disregard of any rate, schedule, rule or regulation, provided or prescribed by said commission," or for failure "to make any report required to be made under the provisions of this Chapter," or for the violation of "any provision of this Chapter." It will be observed that the word "Order" is not mentioned in such section.    Are the other words used therein sufficiently comprehensive to embrace an order made by the Commissioners, such as the one now under consideration?

It could not successfully be contended, nor is such conten-tion attempted, that this order is covered by or embraced within the words "rate," "schedule" or "any report," therefore we may dismiss these terms from our consideration and direct our attention to the words "rule or regulation." As is frankly stated in the brief filed by the defendant in error: · "It is admitted that an order for the erection of a depot is not a 'rate' or 'schedule' and if it is not a 'rule' or 'regulation' then there is no power in the Commissioners to enforce it by the imposition of a penalty." It is earnestly insisted that the words "rule or regulation" are sufficiently comprehensive to embrace such an order and to authorize the penalty imposed, and in support of this contention the following authorities are cited: Black's Law Dictionary, defining regulation and order; Rapalje & Lawrence's Law Dictionary, defining rule; Abbott's Law Dictionary, defining rule; Bouvier's Law Dictionary, defining order and rule of court; Webster's New International Dictionary, defining regulation; Curry v. Marvin, 2 Fla. 411, text 515; In re Leasing of State Lands, 18 Colo. 359, 32 Pac. Rep. 986; Betts v. Commissioners of the Land Office, 27 Okl. 64, 110 Pac. Rep. 766; Carter v. Louisiana Purchase Exposition Co., 124 Mo. App. 530, 102 S. W. Rep. 6, text 9; 34 Cyc. 1031. We have examined all of these authorities, as well as those cited by the plaintiffs in error and a number of others, but shall not undertake an analysis and discussion of all of them. While it is undoubtedly true that the words, rule, regulation and order are frequently used as synonyms; as the dictionaries, both English and law, and the dictionaries of synonyms, such as Soule's show, it does not follow that these words always mean the same thing or are interchangeable at will. It is well known that the same word used in different contexts may mean a different thing by virtue of the coloring which the word

takes on both from what precedes it in the context and what follows after. Thus in discussing the proper constructions to be placed npon the words "restrictions and regulations" as used in the Constitution of this State, then in force, Chap. 4, Sec. 2, No. 1, of Thompson's Digest, page 50, this court in Curry v. Marvin, 2 Fla. 411, text 415, which case is cited to us and relied upon by both the parties litigant, makes the following statement: "The word *restriction* is defined by the best lexicographers to mean *limitation, confinement within bounds,* and would seem, as used in the constitution, to apply to the amount and to the time within which an appeal might be taken, or a writ of error sued out. The word *regulation* has a different signification—it means method, and is defined by Webster in his Dictionary, folio 31, page 929, to be 'a rule or order prescribed by a superior for the management of some business, or for the government of a company or society.' This more properly perhaps applies to the mode and form of proceeding in taking and prosecuting appeals and writs of error. By the use of both of those terms, we think that something more was intended than merely regulating the mode and form of proceedings in such cases.". Thus, in Carter v. Louisiana Purchase Exposition Co., 124 Mo. App. 530, text 538, 102 S. W. Rep. 6, text 9, it is said, "The definition of a rule or order, which are synonymous terms, include commands to lower courts or court officials to do ministerial acts." In support of this proposition is cited 24 Amer. & Eng. Ency. of Law 1016, which is evidently an erroneous citation, whether the first or second edition is meant. See the definition of regulate and rule, 24 Amer. & Eng. Ency. of Law (2nd Ed.) pages 243 to 246 and 1010, and it will be seen that the two words are not always synonymous, much necessarily depending upon the context and the sense in which the words are used. Also see the discus-

sion of the word regulation in 34 Cyc. 1031. We would call especial attention to Morris v. Board of Pilot Commissioners, 7 Del. Chan. 136, 30 Atl. Rep. 667, text 669, wherein the following statement is made by the court: "These words 'rule' and 'order,' when used in a statute, have a definite signification. They are different in their nature and extent. A rule, to be valid, must be general in its scope, and undiscriminating in its application; an order is specific and not limited in its application. The function of an order relates more particularly to the execution or enforcement of a rule previously made." Also see 7 Words & Phrases 6271 and 6272, and 4 Words & Phrases (2nd Ser.) 419, 420. As was held in City of Los Angeles v. Gager, 10 Cal. App. 378, 102 Pac. Rep. 17, "The meaning of the word 'rules' is of wide and varied significance, depending upon the context; in a legal sense it is synonymous with 'laws.' " If Section 2908 had contained the word order, or had authorized the Commissioners to impose a penalty for the violation of any order made by them, there would be no room for construction. The Georgia statute, Acts of 1905, p. 120, generally known as the "Steed Bill," entitled "An act to further extend the powers of the Railroad Commission of this State, and to confer upon the commission the power to regulate the time and manner within which the several railroads in this State shall receive, receipt for, forward and deliver to its destination all freight of every character, which may be tendered or received by them for transportation; to provide a penalty for non-compliance with any and all reasonable rules, regulations and orders prescribed by the said commission in the execution of these powers, and for other purposes," expressly authorized the Railroad Commissioners "to provide a penalty for non-compliance with any and all reasonable rules, regulations and orders prescribed by the said Commis-

sion." See Pennington v. Douglas, A. & G. Ry. Co., 3 Ga. App. 665, 60 S. E. Rep. 485, which we cited with approval in State v. Atlantic Coast Line R. Co., 56 Fla. 617, text 651, 47 South. Rep. 969, 32 L. R. A. (N. S.) 639. Under the reasoning in the cited authorities, especially State v. Atlantic Coast Line R. Co., *supra,* and Morris v. Board of Pilot Commissioners, we are constrained to hold that the fourth and eighth grounds of the demurrer are well founded and that the Railroad Commissioners were not empowered or authorized to impose a penalty upon the three railroads for failure to comply with the order for the erection of a union depot.

Having reached this conclusion, there is no necessity for discussing the other grounds of the demurrer.

As we have frequently held, where there is no sufficient declaration in a case, and a demurrer should have been sustained thereto, the other questions in the record are not open for the consideration of the appellate court. Atlantic Coast Line R. Co. v. Holliday, decided here at the present term.

The judgment must be reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, JJ., concur.