THE CITY OF CORAL GABLES, a municipal corporation, *Appellant*, v. CERTAIN LANDS UPON WHICH TAXES ARE DELINQUENT, CORAL GABLES, INC., *et al., Appellee.*

149 So. 36.
Opinion filed May 10, 1933.
Re-hearing denied July 8, 1933.

*Morton B. Adams, M. McDonald, Boone T. Coulter, F. P. Fleming, E. J. L'Engle* and *J. W. Shands,* for Appellant;

*Frederick W. Schmitz, Clifton D. Benson, Benjamin E. Carey, Charles B. Pierce, Edward B. Hope, Evans & Mershon, M. L. Mershon, John J. Lindsey* and *L. O. Casey,* for Appellees.

BUFORD, J.—The City of Coral Gables sought to enforce the payment of delinquent taxes by the prosecution of a suit in Chancery Court under the provisions of Chapter 15038, Acts of the Legislature of Florida of 1931.

It is not necessary for us to quote the provisions of the Act in this opinion, as it is available in the published statutes of this State to all who are sufficiently interested to turn thereto and read the same.

It is sufficient to say that the Act provides for proceedings in *rem* against the property against which a tax assessment has been made, whether such assessment originated as an ad valorem assessment or as a special assessment, where such assessment, or assessments, have become a lien, or liens, upon the property.

The statute further provides that there may be included in one suit all or any part of the lands upon which tax certificates have been outstanding or taxes have remained delinquent or any special assessment or installment thereon shall have been in default for the respective periods named in the Act; and that there may be included therein all claims and demands of the Municipality against said lands or any part thereof for taxes, tax certificates and special assessment, or special assessments, or installments thereof which may be due and payable to the Municipality at the time of the institution of the suit.

The Act provides the manner in which the suit shall be brought and how jurisdiction may be obtained. That part

of the Act pertaining to the acquisition of jurisdiction is as follows:

"Jurisdiction of any of said lands and of all parties interested therein or having any lien thereon shall be obtained by publication of a notice to be issued as of course by the Clerk of the Circuit Court in which such bill is filed on request of the complainant, once each week for not less than four consecutive weeks, directed to all persons and corporations interested in or having any lien or claim upon any of the lands described in said notice and said bill. Such notice shall describe the lands involved and the respective principal amounts sought to be recovered in such suit for taxes, tax certificates and/or special assessments on such respective parcels of land, and requiring all such parties to appear and defend said suit on or before a rule day specified in said notice, which shall be not less than four weeks after the date of the first publication of such notice. Said notice may be in substantially the following form, with blanks appropriately filled in."

Then follows the form of notice required.

There was a special appearance and motion to quash the process and service of process which motion challenged the jurisdiction of the court over persons other than those appearing and, second, challenged the constitutionality of the mode of procedure prescribed by the statute under which the suit was brought. The Circuit Court correctly held that by filing motion of this character the defendants filing same entered a general appearance. Another special appearance and motion to quash the process and the service of process challenged the jurisdiction of the court over the person of the *movant* and over the property of the *movant* involved in the suit. The Court held that this motion constituted a general appearance. The motion contested not only the

jurisdiction of the Court over the person of the defendant, but also the right of the Court to take jurisdiction over other defendants in the suit and insofar as the jurisdiction of the Court over other defendants is concerned the grounds thereof involve the merits of the case and constitute a general appearance.

Another ground of the motion filed by Coral Gables, Inc., was "because the mode of proceeding, the mode of service and the mode of constructive service are not due process of law but are violative of the provisions of the Fourteenth Amendment of the Constitution of the United States." This ground challenges the constitutionality of the statute prescribing the method of serving process and also the constitutionality of the mode of proceeding therein provided, which included all that the statute required to be done to authorize the foreclosure of such tax liens and included not only an attack upon the service of process, but likewise an attack on all other proceedings taken in the case and the motion was, therefore, one which presented other issues than the jurisdiction of the Court over the defendant.

The holding of the Circuit Court that the filing of those motions constituted general appearances is supported by the opinions and judgments in the cases of Ortell v. Ortell, 91 Fla. 50, 107 Sou. 442; Capper *et al.* v. Bonbright *et al.,* 94 Fla. 1237, 115 Sou. 540; First National Bank v. Board of Public Instruction, 93 Fla. 182, 111 Sou. 521; State *ex-rel.* Pepper v. Atkison, 98 Fla. 996, 124 Sou. 458; and cases there cited.

This case presents no question concerning the validity of the assessment and levy of the creation of the lien by the proper procedure on the part of the taxing officials. We are asked to consider and deal only with the questions which are presented by the challenge of the right of the City to pursue the procedure authorized under Chapter 15038,

*supra.* It is contended that the procedure prescribed by this statute results in owners and claimants of other interests in property being deprived of their property without due process of law, and the appeal is from a judgment of the Circuit Court which in effect holds the Act unconstitutional on that ground.

In Fiehe v. Householder Co., 98 Fla. 627, 125 Sou. 2, we adopted the general definition found in 6 R. C. L. 446 of the essential elements of due process of law and in Tibbetts v. Olson, 91 Fla. 824, 108 Sou. 679, Mr. Justice WHIT-FIELD, speaking for the Court said:

"The Constitution is designed to prescribe and limit governmental powers and to secure individual rights against unlawful invasion by public officers or by private parties. The courts are required to adjudicate rights 'by due course of law,' the essence of which is that by appropriate procedure, duly prescribed, fair notice and a reasonable opportunity to be heard shall be given to interested parties before judgment or decree is rendered."

Due process of law in connection with the enforcement of liens for taxes is not to be confused with, and measured by, the same standards as must be the requirements of due process of law when rights are sought to be enforced between individuals.

Mr. Cooley in his excellent work on Taxation, Vol. 3, Section 1326, 4th edition says:

"Very summary remedies have been allowed, in every age and country, for the collection by the government of its revenues. They have been considered a matter of state necessity. Without them it might be possible for a party which had been defeated in its efforts to obtain possession of the government in the constitutional way, to cripple the government for the time being, and possibly to break it up altogether. If the state might be deprived of the resources

for continuing its existence and performing its regular functions until a revenue could be collected by the processes provided for the enforcement of debts owing to individuals, it would be continually at the mercy of factions and discontented parties. Obviously this could not be tolerated. The protective principles of common law are not supposed to be violated by a resort to summary proceedings in these cases. Summary processes are not necessarily unjust, though they would be so if they deprived the party of a hearing or if they precluded the opportunity for a patient and deliberate examination of the questions upon which his rights depend, before such rights could be finally concluded and cut off. But it is not the design of legitimate tax legislation to do this in any case. It may depart widely in its methods from those resorted to for the enforcement of rights at the common law, but the fundamental rules of justice will be observed, and, in theory at least, revenue laws will careful be for the protection of individual rights."

In the case of Leigh v. Green, 193 U. S. 79, 48 Law Ed. 623, the Supreme Court of the United States had under review the judgment of the Supreme Court of the State of Nebraska obtained in a suit under the statutes of Nebraska for the enforcement of liens for taxes by sale of the property. That statute provided for service of process in Section 5 thereof as follows: •

"Service of process in causes instituted under this Chapter shall be the same as provided by law in similar cases in the District Courts, and where the owner of the land is not known the action may be brought against the land itself, but in such case the service must be had as in the case of a non-resident; if the action is commenced against a person who disclaims the land, the land itself may be substituted by order of court for the defendant, and the action continued for publication."

The Court, speaking through Mr. Justice DAY, in the same case, said:

"A motion is made to dismiss because the claim of impairment of a right secured by the Fourteenth Amendment was not made in the courts of Nebraska until the motion for re-hearing was filed in the Supreme Court. We are unable to discover a specific claim of this character made prior to the motion for re-hearing. In the motion reference is made to the failure of the Nebraska Supreme Court to decide the claim heretofore made, that the statute of Nebraska was unconstitutional because of the alleged violation of the right to due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States. Be this as it may, the Supreme Court of Nebraska entertained the motion and decided the Federal question raised against the contention of the plaintiff in error. In such case the question is reviewable here, although first presented in the motion for re-hearing. Mallett v. North Carolina, 181 U. S. 589.

"The Federal question presented for our consideration is briefly this: Is the Nebraska statute under which the sale was made and under which the defendant in error claims title, in failing to make provision for service of notice of the pendency of the proceedings upon a lienholder, such as Patrick, a deprivation of property of the lienholder without due process of law within the protection of the Fourteenth Amendment?

"The statutes of Nebraska under which the conveyances were made to the Farmers' Loan and Trust Company are given in the margin.

"The evident purpose of Section 4, where the owner of the land is unknown, is to permit a proceeding *in rem*, against the land itself, with a provision for service as in case of a non-resident. By Section 6 it is provided that in cases

where the land itself is made defendant the deed shall be an absolute bar against all persons, unless the court proceedings are void for want of jurisdiction. The object and intent of the action is defined to be 'to create a new and independent title, by virtue of the sale, entirely unconnected with all prior titles.'

"The Supreme Court of Nebraska has held that the term 'owner,' as used in the fourth section, applies to the owner of the fee, and does not include a person holding a lien upon the premises. It is this Section (4) and Section 6 which are alleged to be in conflict with the Fourteenth Amendment. The argument for the appellant concedes that the State may adopt summary or even stringent measures for the collection of taxes so long as they are 'administrative' in their character; and it is admitted that such proceedings will not divest the citizen of his property without due process of law, although had without notice of assessment or levy, or of his delinquency and the forfeiture of his lands. But the argument is, that when the State goes into court and invokes judicial power to give effect to a lien upon property, although created to secure the payment of taxes, the same principles and rules prevail which govern private citizens seeking judicial remedies, and require service on all interested parties within the jurisdiction. The right to levy and collect taxes has always been recognized as one of the Supreme powers of the State, essential to its maintenance, and for the enforcement of which the Legislature may resort to such remedies as it chooses, keeping within those which do not impair the constitutional rights of the citizen. Whether property is taken without due process of law depends upon the nature of each particular case. If it be such an exercise of power 'as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims pre-

scribe for the classes to which the one in question belongs,' it is due process of law. Cooley on Const. Lim (7th ed.) 506.

"The most summary methods of seizure and sale for the satisfaction of taxes and public dues have been held to be authorized and not to amount to the taking of property without due process of law, as a seizure and sale of property upon warrant issued on ascertainment of the amount due by an administrative officer. Murray v. Hoboken Land Co., 18 How. 272; The seizure and forfeiture of distilled spirits for the payment of the tax, Henderson's Distilled Spirits, 14 Wall. 44. The subject underwent a thorough examination in the case of Davidson v. New Orleans, 96 U. S. 97, in which Mr. Justice MILLER, while recognizing the difficulty of defining satisfactorily due process of law in terms which shall apply to all cases, and the desirability of judicial determination upon each case as it arises, used this language: 'That whenever by the laws of a State, or by statute authority, a tax, assessment, service, or other burden is imposed upon property for the public use, whether it be for the whole State or some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections."

In George Hagar v. Reclamation District No. 108, 111 U. S. 71, 28 Law Ed. 569, the Supreme Court of the United States speaking through Mr. Justice FIELD, said:

"The objections urged to the validity of the assessment on Federal grounds are substantially these: that the law

under which the assessment was made and levied, conflicts with the clause of the Fourteenth Amendment of the Constitution declaring that no State shall deprive nay person of life, liberty or property without due process of law; and impairs the obligation of the contract. between California and the United States; that the proceeds of the swamp and overflowed lands ceded by the Arkansas Act shall be expended in reclaiming them.

"That clause of the Fourteenth Amendment is found, in almost identical language, in the several State Constitutions, and is intended as additional security against the arbitrary deprivation of life and liberty and the arbitrary spoliation of property. Neither can be taken without due process of law. What constitutes that process it may be difficult to define with precision so as to cover all cases. It is, no doubt, wiser, as stated by Mr. Justice MILLER in Davidson v. New Orleans, to arrive at its meaning, 'By the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be found.' 96 U. S. 104 (XXIV 619). It is sufficient to observe here that by 'due process' is meant one which following the forms of law, is appropriate to the case and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by law; and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. The clause in question means, therefore, that there can be no proceeding against life, liberty or property which may result in the deprivation of either, without the observance of those general rules established in our system of jurisprudence for the security of private rights. Hurtago v. California (ante 232).

"The appellant contends that this fundamental principle

was violated in the assessment of his property, inasmuch as it was made without notice to him or without his being afforded an opportunity to be heard respecting .it, the law authorizing it containing no provision for such notice or hearing. His contention is that notice and opportunity to be heard are essential to render any proceeding due process of law which may lead to the deprivation of life, liberty. or property. Undoubtedly, where life and liberty are involved, due process requires that there be a regular course of judicial proceedings, which imply that the party to be affected shall have notice and an opportunity to be heard; so, also, where title or possession of property is involved. But where the taking of property is in the enforcement of a tax, the proceeding is necessarily less formal, and whether notice to him is at all necessary. may depend upon the character of the tax and the manner in which its amount is determinable. The necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice, and they are not required for the enforcement of taxes or assessments."

And, again, in the same opinion it is said:

"Of the different kinds of taxes which the State may impose, there is a vast number of which, from their nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes (not dependent upon the extent of his business) and generally, specific taxes on things or persons or occupations. In such cases the Legislature in authorizing the tax fixes its amount and that is the end of the matter. If the tax be not paid the property of the delinquent may be sold and he be thus deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of evidence, or other element

of a judicial nature, and nothing could be changed by hearing the taxpayer."

In Davidson v. Board of Administrators of the City of New Orleans, etc., 96 U. S. 97, 24 Law Ed. 616, the Supreme Court of the United States, speaking through Mr. Justice MILLER, said:

"There is here abundant evidence that there exists some strange misconception of the scope of this provision as found in the Fourteenth Amendment. In fact, it would seem from the character of many of the cases before us, and the arguments made in them, that the clause under consideration is looked upon as a means of bringing to the test of the decision of this court the abstract opinions of every unsuccessful litigant in a State Court of the justice of the decision against him, and of the merits of the legislation on which such a decision may be founded. If, therefore, it were possible to define what it is for a State to deprive a person of life, liberty or property without due process of law, in terms which would cover every exercise of power thus forbidden to the State, and exclude those which are not, no more useful construction could be furnished by this or any court to any part of the fundamental law.

"But, apart from the imminent risk of a failure to give any definition which would be at once perspicuous, comprehensive and satisfactory, there is wisdom, we think, in the ascertaining of the intent and application of such an important phrase in the Federal Constitution, by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded. This court is, after an experience of nearly a century, still engaged in defining the obligation of contracts, the regulation of commerce, and

other powers conferred on the Federal Government, or limitations imposed upon the States.

"As contributing, to some extent, to this mode of determining what class of cases do not fall within its provision, we lay down the following proposition as applicable to the case before us:

"That whenever by the laws of a State, or by state authority, a tax assessment, servitude, or other burden is imposed upon property for the public use, whether it be of the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, which such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections."

In the case of Winona & St. Peter Land Co. v. State of Minnesota, 159 U. S. 526, 40 Law. Ed. 247, the court had under consideration a statute of the State of Minnesota which provided for the enforcement of the tax lien in summary proceedings to be instituted by the county auditor. The statute provided that the filing of the list prescribed verified by the affidavit of the county auditor should be considered the filing of a complaint by the county against the piece or parcel of land therein described to enforce payment of the taxes and penalties appearing against it. The statute required publication to be made of the list, together with the notice in the form prescribed, for at least two weeks in some newspaper of general circulation in the county. It provided that 'Upon the final publication of this notice the jurisdiction of the court over the property attaches." The statute then provided for owners and others interested to appear and defend. In regard to the suffi-

ciency of the notice required, the court, speaking through Mr. Justice Brewer, said:

"That the notice is not personal but by publication is not sufficient to vitiate it. Where, as here, the statute prescribes the court in which and the time at which the various steps in the collection proceedings shall be taken, a notice by publication to all parties interested to appear and defend is suitable and one that sufficiently answers the demand of due process of law. Taylor v. Secor, (State R. Tax Cases) 92 U. S 575, 609, (23; 663, 672); Hagar v. Reclamation Dist. No. 108, 111 U. S. 701, 710; (28; 569, 572); Cincinnati N. O. & T. P. R. Co. v. Kentucky (Kentucky R Tax Cases) 115 U. S. 321 (39; 414); Lent v. Tillson, 140 U S. 316, 328 (45; 419, 425); Pittsburgh C. C. & St. L. R. Co. v. Backus, 154 U. S. 421 (38; 1031). It cannot be doubted under these various authorities that in respect to the collection of these taxes ample provision is made for notice, and, therefore, it cannot be adjudged that the owner is, for want thereof, deprived of his property without due process of law."

The statute here under consideration requires that at least thirty days prior to the filing of the bill for the foreclosure of the lien, written notice of intention to file same should be sent by registered mail to the last known address of the holder of the record title and to the holder of record of such mortgage or other lien, except judgment liens, upon each tract of land to be included in such bill in chancery. It requires the publication of notice to all persons or corporations interested in or having any lien or claim upon the lands against which foreclosure suit is filed, once a week for at least four consecutive weeks prior to the return day and the mailing of a copy of such notice to the holder of record title to the holders of record other than judgments at the last known address by the Clerk of the Circuit Court in which the suit is filed.

Therefore, the statute has provided for all notices to interested parties which is essential to satisfy the due process clause as contained in the 14th Amendment to the Federal Constitution.

It is contended that the provision of the statute contained in Section 4 hereinabove quoted directing publication of notice to be issued is so vague, indefinite and uncertain as to be ineffectual to comply with the due process clause of the Federal Constitution. In connection with this clause of the statute we must read such other provisions of law as may be applicable thereto. This, of course, is a legal notice, being one in connection with and relating to judicial proceedings. Section 2942 R. G. S., 4666 C. G. L., provides as follows:

"Official and legal advertisements relating to any proceedings in any court in this State, and all legal notices and advertisements of sheriffs or tax collectors, unless otherwise provided by law shall be published in the newspaper printed either wholly or in part in the county where such publication is required to be made."

When this section is read in connection with the provisions of the Act here under consideration we find that the published notice required by the Act is required to be published in a newspaper printed either in whole or in part in the county where such publication is required to be made. The record shows that such provisions of law were complied with.

The suit is against the property. In other words, it is a suit *in rem* to enforce the payment of the delinquent tax by sale of the property under foreclosure of the tax lien. The statute warrants no personal judgment against the owner of the property or the owner of any interest therein, or any lien thereon. It constitutes a valid provision for the enforcement of the tax lawfully levied and assessed against the property within the municipality.

On authority of the opinions in the cases hereinbefore cited, we hold that neither the due process clause of the Federal Constitution or Section 12 of the Declaration of Rights of the State is violated if the taxpayer is given notice to be heard in the proceedings which may be provided by statute for the enforcement of the lien for taxes. It is not necessary for us to determine in this case whether a notice and opportunity to be heard in the proceedings for the assessment of a tax would suffice to satisfy the organic provisions above referred to, if enforcement of the collection was sought in a judicial proceeding without notice of such proceeding, though there are some authorities which so hold, because the statute authorizing summary proceedings involved in this case provides for ample notice to and opportunity to be heard by, all interested parties and is sufficient to vest the court with jurisdiction of the subject matter of the suit.

The decree of the chancellor holding the motions to quash to be the equivalent of general appearances is affirmed. The decree insofar as it holds the Act under consideration invalid because of being in conflict with the due process clause as contained in the 14th Amendment to the Federal Constitution, or in conflict with Section 12 of the Declaration of Rights of the State of Florida, should be reversed and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.

DAVIS, C. J., and WHITFIELD, and TERRELL, J. J., concur.

ELLIS and BROWN, J. J., dissent.

DAVIS, C. J. (Concurring).—It seems to me that the statute is well within the definition of what constitutes constitutional due process of law as recently re-stated by the Supreme Court of the United States in American Surety Co. v. Baldwin, 53 Sup. Ct. 98, 77 L. Ed. 231, 287 U. S. 156. Every opportunity to defend is given the property owner

and the tax statutes by themselves and in their operation, put delinquent tax payers on constant notice that the particular statute here invoked may be resorted to after a certain elapsed period. The Court below can administer the Act so as to prevent undue harshness in its enforcement.

ELLIS, J. (Dissenting).—I agree to the conclusion reached by Mr. Justice BROWN. From the standpoint of equity, which we have been taught was the outgrowth of the struggles of conscience to provide relief in meritorious cases, which would not or could not be obtained through the inflexible rules of law, or which by reason of its universality was inefficient to administer the particular relief, the provisions of Chapter 15038, Acts of 1931, cannot be adequately denounced.

In the first place, the title of the Act is indicative of the superficially meticulous care with which it is written. It has at least three objects, not to say three distinct subjects; taxes, penalties for non-payment, and enforcement by suit in chancery. It is an effort to enlarge the chancery jurisdiction of the Circuit Court. It imposes penalties for the non-payment of the amounts apparently due upon the face of the tax certificates although such certificates carry the penalities and costs incurred for the failure to pay the tax assessed before the sale. It purports to vest the Circuit Court with jurisdiction which it did not possess at common law, nor under the Constitution. It undertakes to prescribe the "practice, pleading and procedure" in the suits which it purports to authorize.

The purposes of the Act as indicated by its title are manifold even if by a liberal construction it may be translated into one subject and matter properly connected therewith. It is exceedingly doubtful, however, if not impossible, for the court to "fold its (the statute's) fault in cleanly coined excuses." It confers a special privilege upon municipal corporations, it creates exceptions to general statutes,

it is in derogation of common rights, it is of a penal nature, it gives power to subordinate local authorities. A liberal construction would, if acted upon, produce absurd results, as so ably pointed out by Mr. Justice BROWN. According to the rules of statutory construction the Act should be strictly construed. See Russell v. Sebastain, 233 U. S. 195, 57 L. Ed. 912, 34 Sup. Ct. Rep. 517; Tracy v. Borough of Keansburg, (99 N. J. L. 35) 122 Atl. Rep. 536; People v. State Board of Tax Comm'rs, 174 N. Y. 417, 67 N. E. Rep. 691, 63 L. R. A. 884; text 895, Tampa & Jacksonville Ry. Co. v. Catts, 79 Fla. 235, 85 Sou. Rep. 364; Frazier & Son v. Leas, 127 Md. 572, 96 Atl. Rep. 764; Ekern v. McGovern, 154 Wis. 157, 142 N. W. Rep. 595; 46 L. R A. (N. S.) 796; McDonnell v. Murnan Shipbuilding Corporation, 210 Ala. 611, 98 Sou. Rep. 887; Atlantic Coast Line R. Co. v. State, 73 Fla. 609, 74 Sou. Rep. 595; 59 C. J. 1110, 1124, 1131.

Authorities could be extended in this citation very greatly. The general doctrine is so well recognized, however, by the bench and bar not only of this jurisdiction, but all others, in this country as to render any further references to the authorities a work of supererogation. The only question is whether the criticism is inept.

Now the title of the Act for purposes of its interpretation or construction constitutes part of the Act. See *Ex Parte* Knight, 52 Fla. 144, 41 Sou. Rep. 786, 120 Am. St. Rep. 191; State *ex rel.* Attorney General v. Green, 36 Fla. 154, 18 Sou. Rep. 334; Art. 3, Sec. XVI Const.

The clearest and most cogent reason which has been given by this Court for the existence of the above cited constitutional provision was given by Mr. Chief Justice MABRY in State *ex rel.* Attorney General v. Green *supra*. Quoting in part from Judge COOLEY, he said the reason consists " 'First, to prevent hodge-podge or "log-rolling" legislation; second, to prevent surprise or fraud upon the Legislature by means

of provisions in bills of which the titles give no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.' "

Assuming then that the criticism of the Act as above made is not inept, and applying the rule of strict construction to the title, the first element of doubt arises in determining whether the subject of the Act relates to taxes or special assessments. The symbol and/or is used by those who have or assume to have a super accurate conception of the meaning of English terms to convey the idea that the one or the other or both substantives are embraced within the symbol. If therefore the one or the other name may be taken in strict construction of the title, I submit that it is proper to accept that alternative which will restrict the attempted delegated power to a narrower field of operation, where the power attempted to be delegated is subject to the criticisms made herein of the purposes of the Act. In this view the subject of the Act as expressed in the title would be an Act relating to "Special Assessments," and would therefore be inapplicable to the case at bar.

Again in reference to the method of enforcing the so-called lien the title states that the Act provides a "Supplemental, Additional, Optional and Alternative" method. The terms "Supplemental" and "Additional" have the same meaning. They convey the idea of "addition to supply what is wanted." Webster's International Dictionary. The term "Supplemental" was not used in the restricted legal sense as applicable to bills in chancery, indeed such a meaning would be absurd because the method prescribed by law for the enforcement or collection of taxes whether ad

valorem or special assessments has no defects. Whatever defects may exist in a particular ad valorem assessment or special assessment is the result not of any imperfection in the law but in the negligent or inefficient administration of it by the officials who have charge of such administration.

It is hardly to be assumed that the Legislature conceded the universal existence of negligence and inefficiency on the part of city officials and proceeded to provide a method for the enforcement of the payment of taxes by way of "supplemental" proceedings to cure the universal errors appearing in all assessments caused by the incompetence of city officials. If such was the purpose of the Act and notice of the same had been given in the title it is reasonable to imagine a vigorous protest arising from the scandalized city officials against such impeachment of their qualifications as public servants, if not also from their constituents which selected such officials. I take it therefore that the term "supplemental" was not used in the narrow sense given to it in chancery proceedngs. The terms "optional" and "alternative" are also worthy of some attention that an adequate notion may be obtained of the thought produced in the composite mind of the Legislature which found expression in this remarkable piece of legislation, if it may be designated by that term.

Alternative means in the title two methods offered to the city or town's choice, one or the other of which must be accepted; the choice of one excludes the choice of the other. Optional has the meaning of choice without compulsion and expresses more fully the liberty of choice. See Webster's International Dictionary. So the meaning of the four words is that a method is to be provided for the enforcement of taxes which is in addition to that already provided, which may be chosen or not as the city or town may elect.

What then, is the other method to which the one attempted to be provided by the Act is additional or to which

it may be preferred? The answer is not to be found in the provisions of the Act.

The term "tax certificates" shows that the method provided by law, namely, the sale of the property for the unpaid tax, has already been exhausted. There is no provision of law that a "tax certificate," the certificate issued to a purchaser at a tax sale, where the land is put up for sale to pay the tax assessed and levied against it, is a continuation of the original tax lien. If a lien exists it must be by virtue of some statutory provision. It is not a continuation of the original tax lien, because that lien was extinguished by the sale of the land. The tax certificate carries a new debt, at least a debt in a larger sum augmented by the expense of the sale and bears a usurious interest which in grace has been called a penalty. If a tax certificate lien exists it must be either because the tax lien in favor of the city, which accrued upon the assessment and levy of taxes, is the thing that is sold at tax sale and the original tax lien is continued with added penalties into the certificate, or it must exist by virtue of a statute.

It is true the contrary has been held by this Court but the point was never discussed and rests upon no authority.

The Act under consideration seems to recognize the distinction because in the first section it deals with "The lien of any and all taxes, tax certificates and special assessments." If the lien of "taxes' 'is identical with that of "tax certificates" then the language employed in the act is tautologous, pleonastic, which may be the better word.

The method of enforcement provided by the Act is a "Suit in Chancery in the Nature of a Proceeding in *Rem* Against the Lands Upon Which Such Taxes and/or Special Assessments Constitute Liens." There is no mention in the title of Tax Certificates. A tax certificate is merely a certificate issued by the tax collector that the land described in the certificate has been sold under the law for the payment

of the tax assessed against the land. In this State the method provided by law for the enforcement of the collection of taxes, the enforcement of the tax lien, is by sale of the land. When the land is sold the tax lien is extinguished. At the sale, the purchaser, whether State, County, City or individual, acquires a right superior to all others to a title to the land; a title which carries with it the right to possession and use of the property sold. The vesting of the title is subject to the right of redemption by the owner which right expires in due time. If the State or the taxing agency is the purchaser the title vests *eo instanti* upon the expiration of the time allowed for redemption. If an individual is the purchaser he becomes entitled to a deed from the taxing agency or State upon complying with certain conditions.

A suit in equity may only be maintained for the foreclosure of a tax lien on land when such proceeding is directly authorized by statute, but not when the statutory remedy by advertisement and sale of the property is intended to be exclusive, or is available and adequate. A sale of the land under the statute is an administrative method of enforcement. A suit in equity for foreclosure of the lien is judicial. This doctrine is universally recognized by the authorities.

In Virginia a court of equity has no jurisdiction to enforce a lien on real estate given by a statute for taxes assessed thereon, since such lien is purely legal in its character and can be enforced only in the mode provided by the law of its creation. See Marye v. Diggs, 98 Va. 749, 37 S. E. Rep. 315, 51 L. R. A. 902. See 61 C J. Secs. 1514-1685, title " Sale of Land for Delinquent Taxes."

I realize that this Court has advanced theories different from those expressed above concerning the nature and character of the so-called "Tax Certificates," but it is not the function of courts to make law, although it has been said by some authors that they sometimes do and articles have appeared in legal publication on "Court Made Law."

However that may be, the Act in question carries a title which does not give the constitutionally requisite notice of its subject and the matter properly connected therewith. The matter of enforcing "Tax Certificates" is foreign to the subject expressed in the title. The attempt to confer jurisdiction upon a court of equity to enforce a tax lien is an effort to transmute a purely legal lien into a kind of equitable lien. Such a power does not exist in the Legislature in view of the constitutional jurisdiction of our courts of equity and has no foundation in authority.

The theory that a so-called "tax certificate" is a continuation of the original State or City lien for taxes is unwarranted by authority and utterly groundless in reason. It is not true when an individual purchases land at tax sale and obtains a certificate because the debt due to the State or City for the tax levied has been paid by him. The debt being extinguished the lien is extinguished because there can be no lien without a debt, just as there can be no mortgage lien without a debt. Nelson v. Stockton Mtg. Co., 100 Fla. (p. 2) 1191, 130 Sou. Rep. 74, where the principle was applied.

In cases where the State or the City becomes the purchaser if the original tax lien is continued the State or City has just what it had before the sale, namely, a "lien for taxes." But a lien for taxes may not be enforced in equity because it is a purely legal or statutory lien and the enforcement of legal or statutory liens does not constitute a basis of equity jurisdiction, provision being made by statute for the enforcement of such liens by administrative process of which the State or City has already availed itself by sale of the land. A sale by order of court could accomplish no more. Statutes which provide for the foreclosure of such so-called tax certificates therefore upon the theory mentioned is merely an effort to transmute a purely legal, statutory or administrative process into a judicial process.

In the case of a purchase of the land at tax sale by an individual the doctrine of subrogation does not apply, because that which the individual purchaser at a tax sale acquires is an equitable interest in the land so nearly akin to an interest in real estate that it descends to the heir and not to the executor or administrator upon the death of the purchaser. See Eaton v. The Supervisors of Manitowoc County, 44 Wis. 489, text 492.

While the "Tax Certificates," which is a receipt only required by law to be issued by the Tax Collector to the purchaser of the payment of taxes, does not pass title to the land, it is in fact legal evidence on which the purchaser is entitled to a deed or the redemption money and is prima facie evidence of the facts recited therein, Keller v. Hawk, 19 Okla. 407, 91 Pac. Rep. 778. But a lien is no interest in or right in real estate.

Now the Act under consideration provides for the enforcement of taxes imposed by any incorporated city or town by suit in chancery after the expiration of two years from the date of a "tax certificate," or after any "tax" becomes delinquent by cities whose charter does not require or provide for issuing "tax certificates." A tax certificate is merely a receipt for taxes paid by sale of the land and the tax collector is not required to make out and deliver such receipt unless the statute requires it. Therefore land may be sold for the taxes levied and assessed and purchasers' may appear and buy the land at the sale, yet the statute may not require the issuing of a certificate or receipt to the purchaser. The record made by the Tax Collector is sufficient evidence of the purchaser's rights. So there is no significance in the provision that suit may be brought for the "tax" where the charter does not provide for the issuing of "tax certificates," *non constat* but the land was sold and the "tax lien" extinguished.

The Act is most drastic in its provisions. A city may levy

and assess taxes, when they become delinquent there may be no sale. The city may wait two years and then turn the tax roll over to the attorney to proceed as in his judgment he should proceed. Sec. 3, Chap. 15038, *supra*. It is provided that there may be included in the suit "all claims and demands of said city or town against said lands or any part thereof for taxes, tax certificates and/or special assessments or installments thereof which may be due and payable to such city or town at the time of the institution of such suit." (Italics mine). A proceeding in violation of the doctrine that a tax sale may be made only for the tax levied in the year for which the tax is levied, in violation of the doctrine that two different causes of action may not be combined in one suit. It opens an opportunity for abuse of power in unlawful discriminations in favor of some individuals against whom no action may be taken and against others against whom action is taken. It imposes penalties in the form of additional expenses, costs and attorney's fees; in a few words, it provides a means by which local political organizations may manipulate power by punishing the unfriendly and rewarding the "faithful" to the perpetuation of the existing local political power.

The practical working of the statute, that is to say, how it may be used to annoy and oppress the people by infringing upon their common rights, has been ably presented by Mr. Justice Brown, in whose opinion I fully concur. The drastic provisions of the statute, the penalties imposed, the extraordinary and oppressive use which it undertakes to enable municipalities to make of its provisions through the forum of a court of equity are so offensive to conscience that its own terms condemn it as an attempted exercise of unlawful power.

Brown, J. (Dissenting).—This suit, and the statute under which it was brought, are novelties in Florida jurisprudence. Here we have a suit against 10,000 or more lots or

parcels of land, estimated to be owned by some 3,000 or more separate and unrelated individuals and corporations, not a single one of whom are made parties defendant, and yet whose rights, titles and interests in such respective lots are proposed to be adjudicated and disposed of, finally and forever, without service of process, in this one fell swoop of wholesale judicial action—an application of the modern industrial idea of mass-production to judicial proceedings. True, the mere fact that this statute is a novel one in this State does not condemn its validity, but it does justify its careful scrutiny. The mere reading of the statute (Chapter 15038) gives one reasonably versed in the traditions and principles of Florida jurisprudence a distinct shock. It has been a time-honored construction of the due process clauses of the State and Federal Constitutions by the courts of this State that, however liberal may be the application of those principles to the mere administrative action, such as the assessment and levy of taxes and the conducting of tax sales, the validity of which may be reviewed in the courts, yet when it comes to judicial proceedings, in which the citizen's rights of life, liberty and property are to be adjudicated and determined finally and conclusively, the citizen must be personally served with process, if he reside within the State, and constructive service by publication of notice in a newspaper can only be resorted to where the citizen defendant is either a non-resident of the State or his place of residence is unknown. Tibbetts v. Olsen, 108 So. 679, 91 Fla. 824; 12 C. J. 1231. Certainly, the mailing of a notice by an attorney for the city of an *intention* to file suit, or the publication of a notice by the clerk, not addressed to the owners, but merely describing the lands, is not the equivalent to juridical process issued by a court through a court officer to appear and answer a suit already begun, and served by some duly authorized

officer of the court on the known resident owners, or constructive service by publication in the usual way to non-resident or unknown owners. Constructive service is predicated upon necessity. McDaniel v. McElvy, 91 Fla. 770, 108 So. 120.

But the appellant contends that this statute provides for a proceeding purely *in rem,* an action against the land itself, and that therefore personal service of process is not required, even as against those owners who live in this State, or even in the very county where the proceedings are had. This argument is plausible, but specious.

He "who spake as never man spake" said on one occasion, in substance, that we should not judge by "the appearance," but that we should "judge righteous judgment." This principle underlies the judicial rule of construction, which says that the courts will look through the *form* to the *substance.* Now, on its face, this statute in some respects appears to provide for a proceeding *in rem*—a proceeding solely against the land, but in reality it does not stop there. Under the guise of a proceeding *in rem,* it seeks to adjudicate and take away the property right of the owner, in and to the land, vested in him as an individual, a person, and to forever foreclose and bar his right to redeem it; and all this without naming the owner in the suit, or serving him with judicial process, even though he lived in the very county where the proceeding is instituted. Suppose the Legislature should by a statute attempt to provide this sort of procedure for the foreclosure of mortgages; could it be contended for a moment that such an Act would afford due process of law? Certainly not. Nor does it stand the test of the Constitution merely because a municipality is the party plaintiff. It might possibly stand the test if this Act omitted the use and exercise of the judicial power and made all that is done under it administrative rather than judicial in its nature, incidences

and effects, and thus subject to review by the courts, in which courts due process, such as is appropriate to courts of justice, would be afforded the owner and all other parties having a substantial interest in the subject matter. West Va. Hotel Corporation v. Foster, 101 Fla. 1147, 132 So. 842. This statute attempts to make the courts proceed on the same rather meager and informal basis, as to notice and an opportunity to be heard, as might be valid if exercised by an administrative board or official, whose decisions are final, but subject to judicial review, and yet gives to the adjudication of all questions in the proceeding the sanctity and finality which characterizes the usual judicial action of the courts. This cannot be done. The judicial process cannot be perverted in any such way. The courts are the last bulwark, the final protection, of the life, liberty and property of the citizen, and the courts will never act unless due process of law is afforded. The courts will not try without personal service, when that is possible or without appropriate constructive service when personal service is not possible, and will never condemn without a fair opportunity to be heard. If the courts of this land ever depart from that principle, they will lose that confidence and respect which they have hitherto enjoyed, the preservation of which is absolutely essential to the maintenance of our form of government.

If this statute under which this suit was brought, is carefully analyzed, it will be found that it attempts, under the guise of a suit *in rem*, to adjudicate and finally dispose of questions of property and personal rights which can only be adjudicated and finally disposed of in a suit *in personam*, or a suit *quasi in rem* and *quasi in personam*, in which due process of law, appropriate to courts of justice, must be afforded, but which due process of law is denied by this Act. Blevins v. Smith (Mo.) 16 S. W. 213, 12 L. R. A. 441. It is no reply to this to say that the tax is a

lien on the land and constitutes no personal liability against the owner. The fact remains that the owner retains a valuable right—a right to pay the tax and redeem, and thus save his property, and a right to be heard before his title is divested by a court, which rights are personal to him, and cannot be taken away without due process.

Nor is the proceeding authorized by this statute merely a step in an administrative program for the levy and collection of taxes. All steps in such a program are administrative and subject to judicial review. The statute constitutes a cunningly devised scheme to reduce the courts to the grade of mere administrative functions and yet retain the solemn and final consequences which characterize judicial action, without affording that firm basis of due process of law which the Constitution requires as the primary basis for judicial action.

Our recent case of Milton v. City of Marianna involved a statute which required the suit to be filed against the owners of the property a different kind of statute from the one involved here.

The bill in this case was clearly multifarious, and would have been subject to dismissal on that ground alone. The Legislature may *authorize* the courts to entertain a multifarious bill, but it cannot compel the courts to do so. To attempt such compulsion would be to invade the domain of judicial power. I believe it was Edmund Burke who said, "You cannot indict a whole nation." Neither can you sue thousands of different pieces of land owned by thousands of different and unrelated persons and corporations in one suit without violating the well settled rule against multifariousness, as well as the conception of "cases in equity" which existed at the time our Constitution vested Circuit Courts with jurisdiction of "cases at law" and "in equity." The framers of our Constitution never envisaged such a piece of judicial machinery as this statute attempts

to create, as constituting a "case in equity." Indeed, far-reaching as this statute is, it does not in terms positively require the Circuit Court to entertain such a suit as this. True it is, the statute says: "There may be included in any such suit all or any part of the lands upon which tax certificates have been outstanding or taxes have remained delinquent," etc. In other words, the statute *authorizes* the complainant city to embrace in one suit either all, or part of the lands, upon which taxes are delinquent, but it does not compel the complainant to embrace all of such lands in one suit, nor does it compel the court to permit it to be done. If the Chancellor should become convinced that the inclusion of over ten thousand separate parcels of land belonging to over three thousand different persons would make it difficult or inconvenient for the court to deal justly with each parcel and with the numerous persons owning or having interests in the various parcels, the court would have the right, on motion, or *sua sponte,* to dismiss such a bill of complaint on the ground of multifariousness. Indeed, it would appear that this statute attempts to construct somewhat of a judicial juggernaut, which, like the fabled Hindu car, would leave many suffering victims in its wake; and which would also tend to defeat its prime purpose by reason of placing on the block for forced sale at one time such numerous pieces of real estate as would tend to "glut the market" and diminish the price of each piece to such an extent as to render the cash revenues thus produced inadequate to meet the needs of the city or its creditors. This probable result might well be considered by a court in connection with this question of multifariousness.

But aside from this question, I am persuaded that due process in suits in chancery to foreclose tax liens can only be afforded: (1) Where there is actual service of sum-

mons upon all known interested parties, who reside and can be found within the jurisdiction, and the usually recognized adequate forms of constructive or substituted service is had upon all others; or possibly, (2) where the statute creating the remedy itself fixes a definite time for the institution of such judicial proceedings and provides for notice to all interested parties, fairly apprising them of the nature of the suit or demand and giving them reasonable time for appearance, to be effected by appropriate publication fairly made in the locality where the lands are situated. This statute does not comply with either of these principles.

The Nebraska statute, construed in Leigh v. Green, 193 U. S. 79, 48 Law Ed. 623, cited in the majority opinion, was quite different from the statute here under review. One of the points of difference is that the Nebraska statute provided that service of process must be the same as in similar cases in the district court, but that "where the owner of the land is known, the action may be brought against the land itself." Nor does Hagar v. Reclamation District, 111 U. S. 71, 28 Law Ed. 569, appear to be in point, though there is some general language in the opinion which militates against the views above expressed. That case seems to have been concerned mainly with the validity of a special assessment of lands for a local improvement as provided for by a California statute—a part of the administrative tax program of the district—and the general observations might be construed as limited by the facts of that case. The 8th and 9th headnotes in that case read as follows:

"8. Where life and liberty of the title and possession of property are involved, due process of law requires that there be a regular course of judicial proceedings and that the party to be affected shall have notice and an oppor-

tunity to be heard; but where the taking of property is in the enforcement of a tax, whether notice to him is necessary depends' upon the character of the tax, and the manner in which its amount is determinable.

"9. Where a tax is levied on property, not specifically but according to its value, to be ascertained by assessors, the law in prescribing the time when complaints will be heard, gives all the notice required, and the proceeding though it may be followed, if the tax be not paid, by a sale of the delinquent's property, is' due process of law; so where the assessment may be reviewed by proceedings in the courts."

The case of Davidson v. City of New Orleans, 96 U. S. 97, 24 Law Ed. 616, does not support the statute here in question. The exact holding in that case is very well summed up in the 4th headnote, which is:

"4. In the present case, we hold that when such a burden or the fixing of a tax or assessment by the statute of the State is required to be submitted to a court of justice before it becomes effectual, with notice to the owners and the right on their part to appear and contest the assessment, this is due process of law within the meaning of the Constitution."

Nor is the case of Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 40 Law Ed. 247, opposed to the views' above expressed. As the writer understands it, this was a case in which it was sought to review the assessment of omitted taxes for back years. This was a mere case of a general tax program, and did not involve the perfecting of any title. Under the Minnesota statute, as in some other states, instead of issuing tax deed the original sale is through a court proceeding, which therefore becomes a part of the general collection scheme and is equivalent to the issuance of a deed under our plan, and there-

fore does not require a personal notice. Moreover, such program is in accordance with a set plan to which citizens had become generally accustomed, and is carried out on fixed dates, while in our case the proceeding in question is merely an optional and irregular one, which may or may not be brought, and the taxpayer has no means of knowing when it is actually brought except through proper notice or by continually watching the court dockets, which would be an unreasonable burden. It is true a citizen is expected to know that property will be sold for taxes if not paid, but he is only expected to be diligent in looking for such a sale when it is pursuant to a fixed program. This feature is commented upon as a very important one in the opinion of the court in the cited case in the following language:

"That the notice is not personal but by publication is not sufficient to vitiate it. Where, as here, the statute prescribed the court in which and the time at which the various steps in the collection proceedings shall be taken, a notice by publication to all parties interested to appear and defend is suitable and one that sufficiently answers the demand of due process of law."

See also in this general connection Seaboard-All-Florida Ry. Co. v. Leavitt, 141 So. 886, 889; opinion of Judge Loging in Tyler v. Judges of Court of Registration, 51 L. R. A. 436; Webster v. Reid, 11 Howard 437, 13 L. Ed. 761; Pennoyer v. Neff, 95 U. S. 714, 24 Law Ed. 565.

If this novel proceeding had worked out fairly and justly, such result might be some argument in its favor. If it had resulted better than the old system, a further argument might be brought forward, but it suffers badly by comparison.

Taking the complainant's own figures that there are 1,531 persons and corporations interested as owners and encumbrancers of record, we find only 41 (Transcript p. 160)

who appeared in this case. Of the 1,531 persons and corporations whose interests are to be affected by the suit, the huge number of 1,490 failed to appear. In other words, this novelty resulted in less than three per cent. (3%) of appearance, indicating a wholly ineffective method of notice to those whose property is to be affected by the litigation.

If the 1,531 parties in interest, or a substantial portion thereof, had all received notice of the suit and appeared, in the cause, this case would be a monument in litigation. Many diverse interests must of necessity exist, including claims of persons whose interests are given special protection by the law of this State. Persons in interest whose homesteads are involved could insist that the action as to them was premature, as our Legislature has provided that a tax certificate cannot be foreclosed upon a homestead until after the lapse of four years. Sec. 1003 (1) C. G. L. 1932, supplement. A Federal receiver, such as the one appointed for the City National Bank in Miami, could insist upon a severance in order to have his case tried in the United States courts. The interests of minors and persons under disability are entitled to be protected by the appointment of a guardian *ad litem*.

The Act assumes that the purchaser at the tax sale acquired only a lien upon the land which can only ripen into title by foreclosure proceedings. If this be true, I submit that the nature of this suit is such as to involve personal rights and property rights of the owners of the land, which tends to preclude the theory that this is an action purely *in rem* for the enforcement of the collection of the tax. While the tax may not be a personal obligation of the owner and it is contended that the tax certificates sought to be foreclosed in this suit constitute only a lien upon the land, the fact remains that then, on that theory, the title and the right of possession did not pass to the purchaser or purchasers at the municipal tax sale, and such purchaser

would have no right to seize the property or deal with it as his own. Nor has the lower court seized the property. So it cannot be said that this was a suit to dispose of property *in custodia legis.* Pennoyer v. Nehf, *supra.*

The bill of complaint asks for relief against persons as opposed to relief asked for against lands alone, and the complainant prays that jurisdiction shall be taken by the court "of all parties interested in or having any lien upon any parcel of land described herein," that persons or corporations appearing and defending be required to make answer according to Chancery practice; that an accounting be taken and in default of payment, that the lands be sold; that "any person or persons interested in any lands included in this suit may redeem such lands at any time prior to the sale thereof;" that "all parties interested therein or having any lien thereon" be forever barred and foreclosed of all their right, and that the purchaser at the sale be given full and complete possession, which last relief could only be granted by a writ of assistance against an occupant.

It seems from an examination of Chapter 15038, Laws of 1931, that the Legislature attempted to authorize a suit in chancery, partly personal in nature, without conforming to chancery requirements of naming and serving interested parties, although jurisdiction over them was contemplated. It is provided in Section 4 of the Act (Chapter 15038) as follows:

"Jurisdiction of any said lands and of all of said parties interested therein, or having any lien thereon, shall be obtained by publication of a notice to be issued as of course by the Clerk of the Circuit Court in which such bill is filed, on request of complainant."

The Act also provides in Section 5 thereof, as follows:

"Each and every person and/or corporation interested

in or having any lien upon any parcel of land described in the bill of complaint shall be deemed a party to said cause."

The Act itself (Section 2), in addition to the specific provisions above quoted as to parties, does not provide, even if such a thing were possible, that the suit shall be an action *in rem,* but only one "in the nature of a proceeding *in rem."*

The Act also provides in Section 3 thereof, as follows:

"The practice, pleading and procedure in any such suit shall be in substantial accordance with the practice, pleading and procedure for the foreclosure of mortgages of real estate, except as herein otherwise provided."

In view of these provisions as well as of the provisions and prayer for relief contained in the bill of complaint, I submit that this suit cannot, as contended by appellant, be considered as strictly an action *in rem.*

This case has been very ably briefed and argued by counsel for the respective parties, and the writer would attempt to analyze and differentiate other cases cited by counsel if time and space permitted. Enough has been said, however, to indicate the principles and the reasoning underlying the conclusion which I have reached, that the Act under which this proceeding was brought does not afford due process of law and is therefore unconstitutional and void, and that the decree of the court below, so holding, should be affirmed.

ELLIS, J., concurs.