WILDWOOD INDEPENDENT RECORD PUBLISHING COMPANY, A CORPORATION OF NEW JERSEY, AND JOSEPH HUGHES, PLAINTIFFS, v. THE CITY OF WILDWOOD, A MUNICIPAL CORPORATION OF NEW JERSEY, AND THE MAYOR AND COMMISSIONERS OF THE CITY OF WILDWOOD, DEFENDANTS, AND CAPE MAY COUNTY LEADER CO., DEFENDANT-INTERVENOR.

Superior Court of New Jersey
Law Division

Decided May 12, 1955.

*Mr. J. W. Acton,* attorney for plaintiffs.

*Mr. Irving Shenberg,* attorney for defendant City of Wildwood.

*Mr. Arthur W. Lewis,* attorney for defendant-intervenor Cape May County Leader Co. (*Messrs. Lewis & Hutchinson,* attorneys).

HANEMAN, J. S. C. This is an action in lieu of prerogative writ, in which the plaintiff questions the legality of the publication by the City of Wildwood of certain legal notices printed and appearing in a newspaper published by the defendant Cape May County Leader Co. Plaintiff as well contends that a newspaper published by it alone meets the requisite statutory qualifications for the publication of said notice.

The particular advertisements, the legality of the publication of which is disputed, and the particular statutes which it is contended said advertisements violate, are as follows:

| | *Item and Date* | *Statutes* |
|---|---|---|
| (1) | "Ordinances of the City of Wildwood No. 514" (2/4–11–18/54) | *N. J. S. A.* 40:49–27 and *N. J. S. A.* 40:1–20 |
| (2) | "Advt. for bids for Liquid Chlorine" (2/4–11/54) | *N. J. S. A.* 40:50–4 |
| (3) | "Advt. for bids of Sewer Construction" (2/4–11/54) | *N. J. S. A.* 40:63–45 |
| (4) | "Advt. for bids for Diesel Engine Oil, etc." (2/4–11/54) | *N. J. S. A.* 40:50–4 |
| (5) | "Ordinance of the City of Wildwood No. 513" (1/21–28/54) | *N. J. S. A.* 40:49–2 |
| (6) | "Notice to bidders—cast iron pipe, etc." (1/21–28/54) | *N. J. S. A.* 40:50–4 |
| (7) | "Notice to bidders—extension water dist." (1/21–28/54) | *N. J. S. A.* 40:50–4 |
| (8) | "Ordinance of the City of Wildwood No. 512" (12/24–31/53 and 1/7/54) | *N. J. S. A.* 40:49–2 |
| (9) | "Advt. for bids—sewer construction" (1/7–14/54) | *N. J. S. A.* 40:63–45 |
| (10) | "Advt. for bids—storm sewer" (1/7–14/54) | *N. J. S. A.* 40:63–45 |
| (11) | "Notice to bidders—well drilling" (12/24–31/53) | *N. J. S. A.* 40:50–4 |
| (12) | "Notice to bidders—rent of wharf and dock" (12/24–31/53) | *N. J. S. A.* 40:179–11 |
| (13) | "Advt. bid for nails & lumber" (10/22–29/53) | *N. J. S. A.* 40:50–4 |
| (14) | "Advt. bid for repairs to concrete curbs and gutters" (11/5–12/53) | *N. J. S. A.* 40:50–4 |
| (15) | "Budget" (2/4/54) | *N. J. S. A.* 40:2–7 |

Plaintiffs as well contend that the defendant-intervenor's newspaper does not meet the qualifications set forth in *N. J. S. A.* 35:1–2.2.

Of the statutes above referred to, the specific phraseology referred to by the plaintiffs read as follows (Italics supplied):

"shall be published at least once, ten days prior to the date fixed for receiving such bids, in a newspaper *circulating in the municipality.*"   (*N. J. S. A.* 40:50–4.)

"in at least one newspaper *published or circulating in the municipality.*"   (*N. J. S. A.* 40:63–45.)

"in two newspapers *published and circulating in the county in which such city is located.*"   (*N. J. S. A.* 40:179–11.)

"shall be published at least once in at least one newspaper *circulating in the municipality or county.*"   (*N. J. S. A.* 40:2–7.)

"*published and circulating in the municipality.*"   (*N. J. S. A.* 40:49–27;   *N. J. S. A.* 40:1–20 and *N. J. S. A.* 40:49–2.)

*N. J. S. A.* 35:1–2.2 reads as follows, as far as here pertinent:

"Whenever, by law, it is required that there be published by printing and publishing in a newspaper or newspapers ordinances, resolutions or notices or advertisements of any sort, kind or character by any county, city or other municipality * * * such newspaper or newspapers must, in addition to any other qualification now required by law, meet the following qualifications, namely: * * * shall have been published continuously in the municipality where its publication office is situate for not less than two years and shall have been entered for two years as second-class mail matter under the postal laws and regulations of the United States."

This matter was submitted partially on stipulation and upon special application on proof in open court. I find the following facts in connection herewith:

Plaintiff is a New Jersey corporation, incorporated in 1950, with its registered office at 3600 Pacific Avenue, in the City of Wildwood, Cape May County, New Jersey. It has continuously, since the July following its incorporation, published and circulated a newspaper known as *The Independent Record* in the City of Wildwood and throughout the

area known as Five Mile Beach. It is not a member of the Associated Press or the New Jersey Press Association, but is a member of the American Press Association. It has a circulation of approximately 3,000. Its main office, as well as its printing plant, is located at 3704 Park Boulevard, in the City of Wildwood.

The defendant intervenor, Cape May County Leader Co., is a New Jersey corporation, having been incorporated in 1926. Its registered office is at 3511 Atlantic Avenue, Wildwood, New Jersey. It has, since its incorporation in 1926, published weekly a newspaper known as *The Wildwood Leader* and has, since 1939, according to the masthead of its publication, had its general office at 3511 Atlantic Avenue, Wildwood, New Jersey. The statement of ownership, management and circulation required by the Act of Congress, 39 *U. S. C. A.* § 233, recites the publisher's address as "Cape May County Leader Co., Inc., 3511 Atlantic Avenue, Wildwood, New Jersey." It has a weekly circulation of approximately 9,500, and is a member of the Associated Press and the New Jersey Press Association. It is printed in the printing shop of the Cape May County Leader Co., at 12th and Atlantic Avenues in the City of North Wildwood, Cape May County, New Jersey.

Since 1938, except for a brief period of time when the premises were destroyed by fire, the Cape May County Leader Co. maintained an office at 3511 Atlantic Avenue, in the City of Wildwood, New Jersey. This office was of the dimensions of 30 feet by 30 feet and was located in a one-story office building annexed to or part of a theatre building. The office is as well the main office of the William C. Hunt Enterprises, which include the management and operation of various amusement enterprises, as well as two other newspapers. The title of the newspaper is *The Wildwood Leader*, with the headline address of "Wildwood, New Jersey." The masthead of the editorial page recites the general office as being at 3511 Atlantic Avenue, Wildwood, New Jersey, and notes that the newspaper is entered at the post office in Wildwood, New Jersey, at that address. Letterheads and

billheads used by the company in connection with its correspondence and billing all contain the identical Wildwood address. All motor vehicle applications, licenses, filing of state welfare papers, and banking of the company, use the same address. All annual reports filed with the Secretary of State since 1938 use that address. The managing editor has a desk at both the Wildwood address and at the printing plant at North Wildwood. Incoming mail is received either in the post office box in Wildwood or is delivered to 3511 Atlantic Avenue, Wildwood, New Jersey. Sixty-five per cent of the total distribution of the newspapers is in the City of Wildwood, although as above noted, the newspaper is actually printed in the City of North Wildwood. The mechanics in connection with the issuance and delivery of *The Wildwood Leader* to newsdealers and newsstands is as follows: Newspapers are loaded on a truck at the printing plant at North Wildwood and proceed with the delivery, in the first instance, to newsstands and newsdealers in the City of Wildwood. When this delivery has been completed the truck driver telephones to the printing plant and the balance of the newspapers are then issued to dealers in North Wildwood. Those issues of the paper which are mailed are taken in bags to the post office in Wildwood.

There is no doubt that both papers are circulated in the City of Wildwood, nor is there any doubt that the plaintiff's paper is published and circulated in the City of Wildwood. The sole question is whether the defendant intervenor's newspaper, *The Wildwood Leader*, is published in the City of Wildwood.

In *Montesano v. Liberty Warehouse Co.*, 121 *N. J. L.* 124 (*E. & A.* 1938), the court said:

"It is conceded that the printing is not done at the branch office, and it is also conceded that a newspaper may be published where it is not printed. It appears, however, that within the meaning of such statutes as that upon which we are now passing the place of publication of a newspaper is where the paper is first put into circulation, where it is first issued to be delivered or sent, by mail or otherwise, to its subscribers. *People ex rel. O'Connell v. Read*, 256 *Ill.* 408, 100 *N. E.* 230; *State v. Bass*, 97 *Me.* 484, 54 *A.* 1113."

See also *Bayer v. Mayor, etc., of City of Hoboken*, 44 *N. J. L.* 131 (*Sup. Ct.* 1882).

In *In re Bond Printing Co., Inc.*, 135 *N. J. L.* 478 (*E. & A.* 1947), the court said:

"Clearly, the intention of the legislature was to limit legal advertising only to those newspapers having stability and continuous existence in the municipalities where their publication offices are maintained, and, to qualify for such legal advertising, two years was determined as the minimum period within which a newspaper must be in existence in such municipality."

*The Wildwood Leader* is first put into circulation in Wildwood. It is under the control of the publisher until delivered to the newsstands or newsdealers or deposited in the post office in Wildwood for mailing. It is first issued for public consumption in Wildwood, and only after the newspaper has been completely issued in Wildwood is it released to the public in any other municipality. I find, therefore, that not only is *The Wildwood Leader* circulated in Wildwood, but that its publication office has been there situated for upwards of two years and it has been there published for upwards of two years. It has been entered as second-class mail matter under the postal laws and regulations of the United States, in Wildwood.

Judgment will therefore be entered for the defendants.