QUESTION:
Is a newspaper (the Sentinel Star) which has its home offices in Orange County, but which has a major production plant in Seminole County and is in general circulation there, qualified under Ch.50, F.S., to publish legal advertisements in Seminole County?
SUMMARY:
A newspaper which complies with the requirements of ss. 50.011 and50.031, F.S., as to general circulation, availability to the public, entry as second-class matter, and the like, in a particular county, is qualified to publish legal advertisements in that county even though it is printed and has its business offices in another county.
Section 50.011, F.S., provides that any statutorily required legal notice, advertisement, publication, or construction service of process shall be:
". . . a publication in a newspaper printed and published periodically once a week or oftener, containing at least twenty-five per cent of its words in the English language, entered or qualified to be admitted and entered as second-class matter at a post office in the county where published, for sale to the public generally, available to the public generally for the publication of official or other notices and customarily containing information of a public character or of interest or of value to the residents or owners of property in the county where published, or of interest or of value to the general public."
Section 50.031, F.S., requires that such newspapers also "shall have been entered as second class mail matter at a post office in the county where published" for a one-year period prior to their being used for the publication of legal notice, advertisement, publication, or constructive service.
Assuming that the Sentinel Star has been entered as second class mail matter at a post office in Seminole County for a period of one year, that it is available generally in Seminole County for the publication of legal notices, and that it customarily contains either information of a public character or of interest or value to the residents or property owners of Seminole County or information of interest or value to the general public, your question is answered affirmatively.
The answer depends upon an interpretation of the phrase, "the county where published," and the phrase, quite obviously, could logically be interpreted in either of two ways: The county where the actual printing is done (or where the primary business office is located or where the newspaper is initially circulated), or any county in which the newspaper is generally made available for sale or distribution to the public.
Florida appellate courts appear to have touched upon this question only twice, discounting those decisions directed toward a definition of "publication" in reference to the choice of venue in a libel action against a newspaper. (See, e.g., Perdue v. Miami Herald Publishing Co., opinion filed Jan. 17, 1974 [Fla. Sup. Ct.], pending on rehearing.)
In Tylee v. Hyde, 52 So. 968 (Fla. 1910), the Supreme Court considered a statute, s. 788, Gen. St. 1906, which required the publication of bond resolutions "in the several newspapers printed in the county . . . ." Literally construing the statute, the court held that resolutions were not required to be published in a newspaper widely circulated in the county involved but "actually printed" elsewhere. The case has little bearing on the instant question because the statute involved, long since repealed, was of a decidedly different nature than those now found in Ch. 50, F.S.
Another statute substantially different from those in Ch. 50, F. S., was considered by the Supreme Court in City of Coral Gables v. Certain Lands, etc., 149 So. 36 (Fla. 1933). Section 4666, Compiled General Laws 1927, a predecessor to s. 50.011, required that legal notices and advertisements "be published in the newspaper printed either wholly or in part in the county where such publication is required to be made." Again, the court merely construed the statute literally and found that notice had properly been given in a newspaper printed in the county where the notice was required.
Neither of these cases was concerned with a statute requiring "publication" in a county, as opposed to actual printing, but there are many cases from other jurisdictions which have interpreted statutes similar to s. 50.011, F.S., requiring that notice be given in a newspaper "published" in a particular geographical area. The weight of authority, particularly in the more recent cases, is that such statutes do not require that a newspaper be printed or initially distributed within the area or that the newspaper's principal office be located there, but only that it be published there in the general sense, i.e., "disseminated," "made available to the public," or "circulated." E.g., Hunterdon County Democrat, Inc., v. The Recorder Publishing Co., 285 A.2d 258 (N.J. 1971); State v. Vigil, 398 P.2d 987 (N.M. 1965); Wildwood Independent Record Publishing Co. v. City of Wildwood, 114 A.2d 483 (N.J. 1955); Drabinski v. Brown,296 N.W. 538 (Mich. 1941). Contra, Bankers Trust Co. v. Terll,321 N.Y.S.2d 374, 35 Misc.2d 835 (N.Y. Co. 1962); Carter v. Land, 164 S.E. 205 (Ga. 1932).
Each case in which the question has been decided has, of course, turned, in part, on the particular wording of the statute involved. However, when the terms of these statutes did not specifically require that a newspaper be "printed" or "located" in a particular place (and even, on occasion, when such requirements were specified), most courts seem to have considered the purpose and intent of such notice statutes as controlling their interpretation. Since the purpose of these statutes is to provide as effective a notice as possible to local residents and local property owners of legal events and actions having local significance, the circulation of a newspaper and its general content and relevance to the local populace ought to take precedence over technical factors such as the actual location of the typesetters and presses. As stated by the Supreme Court of New Mexico in State v. Vigil, supra, at 991:
"[T]he intent of our legislature in using the word "published" . . . was to give notice to the public by insertion in a newspaper of general circulation within the boundaries of the municipal corporation, regardless of where the newspaper is physically printed. After all, the aim of a statute requiring legal publications is so that the contents of the notice may be brought home to the public generally."
The location of a newspaper's business offices and the place where the newspaper is first circulated are also irrelevant factors to a determination of whether the newspaper is qualified to accomplish the purpose of legal notice statutes. The factors which are relevant — local significance, local availability, and local circulation — are required by s. 50.011, F.S. It is my opinion that the legislature, in using the term "published" in the statute (and in repealing an earlier statute using the term "printed") did not intend to add other requirements which are technical and irrelevant.